OPINION OF THE COURT
Fuchsberg, J.
This appeal calls upon us to construe subdivision 5 of section 672 of our Insurance Law, which mandates that the compulsory liability coverage required of the owner of every New York automobile include “insurance coverage *165 for such motor vehicle at least in the minimum amount required for such vehicle by the laws of [any] other state or Canadian province” when the vehicle is “used or operated” in such foreign jurisdiction; in substance, Insurance Department regulations have implemented this provision by reading it into every owner’s policy (11 NYCRR 60.1 [e]). In applying subdivision 5 to the present case, of necessity we also must examine the pertinent laws of North Carolina, the State in which the events which led to this controversy arose.
The plaintiff, Country-Wide Insurance Company, is the liability carrier under a policy issued to defendant Louis Padilla on a passenger car registered to him in New York. The liability limits, broadly stated, are $10,000 for injuries to any one person and $20,000 for all persons injured in a single accident, the minima required by subdivision 2-a of section 167 of the Insurance Law. While the policy was in force, Padilla was driving his automobile in North Carolina when he was involved in a collision in which one of his passengers, Nieves Rodriguez, an infant, was injured. There followed a suit in Supreme Court, Bronx County, by young Rodriguez and her mother against Padilla and, as called for by the policy, defended by Country-Wide. It eventuated in the entry of a $100,000 judgment for the child.
In the present action, Country-Wide, joining the child, the mother and Padilla as defendants, seeks a declaration that the limit of its obligation is to pay $10,000 towards the satisfaction of the judgment and not $15,000, the minimum insurance limit generally provided for injury to one person under North Carolina’s compulsory statutory scheme (see NC Gen Stats, §§ 20-309, 20-279.1, subd [11]). By way of alternative relief, Country-Wide asks that, in the event of an unfavorable determination, Padilla indemnify it for the $5,000 differential.
On cross motions for summary judgment, Special Term granted defendants Rodriguez’ motion, dismissed CountryWide’s complaint, inclusive of its quest for indemnity, and declared that the policy afforded the $15,000 coverage (103 Misc 2d 906). The Appellate Division, one Justice dissenting, has since affirmed, essentially on the simple proposi *166 tion that our statute “has chosen to adopt the North Carolina minimum” (80 AD2d 130, 133).
On Country-Wide’s further appeal, taken pursuant to CPLR 5601 (subd [a], par [i]), it presses its arguments, inter alia, that North Carolina exempts nonresident vehicles, i.e., those not registered in North Carolina, from its compulsory insurance requirements;[1] that subdivision 5 of section 672 is concerned with financial security and not liability coverage; that, since the passengers and their host were all New York residents, whose relationships and expectations were determined in New York, and since their presence in North Carolina as they were passing through that State at . the time of the accident was fortuitous, the need to apply subdivision 5 of section 672 was obviated; that, in any event, since there was no proof that any sanctions, whether by way of the imposition of security or suspension of driving privileges or otherwise, were ever levied on Padilla by North Carolina as a consequence of the accident, that State’s minimum limits, assuming they were within the scope of subdivision 5 of section 672, never came into play; and that, though its assured, under the policy’s surety clause, would have to reimburse Country-Wide for any obligation it might undertake by using its New York minimum policy as proof of nonresidential financial responsibility, its obligation to make it available in the first instance constituted compliance with North Carolina law. For the reasons which follow, we nevertheless conclude that the result reached by the Appellate Division should be upheld.
Our analysis first focuses on subdivision 5 of section 672 of the Insurance Law, which was part of the complex of statutes which came into existence with the enactment of the New York “No-Fault Law” (L 1973, ch 13, § 1). These statutes, as did others of the same ilk which have proliferated in almost every State since the 1960’s, reflected a felt need to provide a more adequate and efficient system of *167 financial responsibility for compensating victims of automobile accidents (see Montgomery v Daniels, 38 NY2d 41, 50). It therefore would be unthinkable to assume that our legislators were not conscious of and concerned with the hazards the owners and other occupants of New York automobiles would face when they ventured into States (or Canadian provinces) whose laws specified different, and perhaps higher, minimum liability levels (see, generally, Conrad, Morgan, Pratt, Jr., Voltz and Bombaugh, Automobile Accident Costs and Payments [Univ of Mich Press]).
Turning to the North Carolina statutes, we immediately observe that, as a prerequisite for registration of a motor vehicle, an owner must certify to financial responsibility (NC Gen Stats, “Vehicle Financial Responsibility Act of 1957”, § 20-309, subd [a]). Such certification requires proof either of a liability insurance policy or a qualitatively equivalent security deposit or self-insured status, each designed to meet the quantitative minimum liability limits of $15,000/$30,000 (NC Gen Stats, § 20-309, subd [b]; § 20-279.1, subd [11]).
True, New Yorkers driving through North Carolina do not have to meet the State’s registration requirements (see n 1, supra). But this is the beginning and not the end of possible penalties, sanctions and forfeitures to which other provisions of the North Carolina statutes expose them. For, in the event of an accident, a series of alternatives which can be most onerous for the nonresident owner or operator are set in motion. In such circumstances, article 9A of the Motor Vehicle Law of North Carolina, entitled “The Motor Vehicle Safety and Financial Responsibility Act of 1953”, mandates that the operating privileges of the nonresident owner or operator involved be suspended (NC Gen Stats, § 20-279.5, subd [b]; see, generally, Faizan v Grain Dealers Mut. Ins. Co., 254 NC 47). Unless the Commissioner of Motor Vehicles receives satisfactory evidence within 20 days after receipt of an accident report that a formal release, settlement or adjudication of nonliability has been obtained (no doubt a rare accomplishment in so short a time span), avoidance of suspension hinges on the ability of a driver to deposit such sum, up to $15,000 for one person’s injury or death or $30,000 for any one accident, as the *168 commissioner finds sufficient to secure payment of judgments for any damages (see NC Gen Stats, § 20-279.5, subd [a]; and § 20-279.9).
Most significantly, possession of a liability policy circumvents all this license suspending and security posting, only “provided, however, every such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and cost, of not less than fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than thirty thousand dollars ($30,000) because of bodily injury to or death of two or more persons in any one accident” (NC Gen Stats, § 20-279.5, subd [c] [emphasis added]), such coverage, of course, being, to track our subdivision 5 of section 672, “the minimum amount required for such vehicle by xthe laws of [North Carolina]”. (See, also, NC Gen Stats, § 20-279.20, subd [a], par [2], which mandates that the nonresident’s certificate of financial responsibility provided by a carrier state that the policy “shall be deemed to conform with the laws of this State relating to the terms of motor vehicle liability policies issued herein”.)
As a practical matter then, the “exemption” of nonresident vehicles by North Carolina, while technically possible, is hardly short of illusory. For, the net result is that, although North Carolina, strictly speaking, does not require nonresidents to carry insurance in the limits prescribed by it ab initio, in the end the nature of its over-all plan is such that any State concerned with shielding its motorists, as New York obviously was when it adopted subdivision 5 of section 672, could hardly have failed to insist on the ultimate security of the North Carolina insurance limits within the out-of-State protection it mandated. It therefore would be unrealistic in the extreme to suppose, as the appellant here would have us do, that our Legislature intended instead to subject the hundreds of thousands of its motor vehicle owners who drive across State lines each year to the other burdens.
Also, in light of the overriding purpose of subdivision 5 of section 672, whether the potential liabilities óf the appellant stem from the financial security or compulsory insur *169 anee sections of North Carolina law or from a combination of both, is, at best, a consideration of form rather than substance. And, as to the appellant’s surety clause contention, it seems especially inconsistent with the language of subdivision 5 of section 672 to suggest that our Legislature ever intended to impose ultimate personal liability on New York drivers for the differential between our minimum limits and those of foreign jurisdictions, be it $5,000 or even more.[2]
Nor are we moved to any different determination in this case because, for unexplained reasons, be they intentional or inadvertent in character, the North Carolina Commissioner of Motor Vehicles here did not exercise the right to suspend or fix the amount of security. The obvious answer to this contention is that the risks contemplated by subdivision 5 of section 672 were those envisioned in prospect, not in retrospect.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. This point is based at least in part on the reciprocity inherent in the interplay of section 20-4.8 of the North Carolina General Statutes and subdivision 1 of section 250 of the New York Vehicle and Traffic Law. The North Carolina statute exempts from its registration requirements vehicles properly registered in another jurisdiction so long as the foreign jurisdiction grants like exemptions to vehicles registered in North Carolina. The New York statute does so provide.

. As to the dissenter’s hypothetical query as to whether subdivision 5 of section 672 would reduce the coverage to a limit below that fixed by subdivision 2-a of section 167 of the Insurance Law when a New York automobile enters a State with lower limits, suffice it to say that subdivision 5 of section 672 does not so provide. Rather, since it specifies that the coverage shall be “at least in the minimum amount required [by the] other state”, the New York limits in any event would remain applicable.