ALLCITY INSURANCE COMPANY, Respondent, v MONCURE WILLIAMS, Appellant.

Second Department, October 14, 1986

1

### APPEARANCES OF COUNSEL

*Kenneth F. Kaplan (Larry E. Ribowsky* of counsel), for appellant.

*Becker & Engelman (Nathan Cyperstein* of counsel), for respondent.

### OPINION OF THE COURT

LAZER, J.

What we decide here is whether and how certain New Jersey requirements relative to uninsured motorist coverage fit into the New York uninsured motorist endorsement when the accident that triggered the New York insured's claim occurred in New Jersey.

The insured, Moncure Williams, was injured when the New York registered car he was driving left the roadway of the New Jersey Turnpike and struck a guardrail. According to Williams, the accident was caused by an unknown driver who forced him off the road, without any contact between the two vehicles. Following the accident, Williams made a claim under the uninsured motorist endorsement of his New York automobile insurance policy issued by the petitioner Allcity Insur-

ance Company. Under that endorsement, Allcity agreed to pay benefits in the event of a "hit and run" accident provided the insured reported the accident to the police within 24 hours of its occurrence and filed a statement under oath setting forth the facts within 90 days. A "hit and run" accident was defined to require physical contact between the two vehicles and the policy coverage was explicitly limited to accidents which occurred in New York.

When Williams demanded arbitration of his claim, Allcity responded with a motion for a stay of arbitration on the ground that he had failed to make the required police report. In opposition to the stay motion, Williams submitted a copy of his police report, but while the report contained Williams' declaration that he had been forced off the road by another vehicle, it was also clear that there had been no physical contact between his car and the unknown vehicle. Anticipating that Allcity would raise lack of physical contact in support of its motion, Williams argued that under the Insurance Law and the regulations promulgated under it, it was unnecessary to establish physical contact because the accident happened in New Jersey and that State's mandatory automobile liability insurance requirements had to be read into his policy. The New Jersey uninsured motorist endorsement does not include a physical contact requirement *(Perez v American Bankers Ins. Co.,* 81 NJ 415, 409 A2d 269). In reply, Allcity contended that New York law applied, that even if New Jersey law did apply, Williams was not entitled to recover because he had not submitted a statement under oath setting forth the facts of the accident within 30 days in accordance with that State's requirements; and that in any event no other vehicle was involved in the accident, so uninsured motorist coverage was not applicable.

Special Term did not address the contention that no other car had been involved in the accident. Special Term also rejected Allcity's claim that Williams had not filed a statement under oath within the 30-day limit fixed by New Jersey law since that issue had been raised for the first time in reply. Nevertheless, the court granted the stay on the ground that New York's physical contact requirement had not been satisfied. This was error.

We need give little pause to Allcity's contention that the stay was warranted because the accident resulted from Williams having fallen asleep at the wheel. The contention raises a factual issue within the scope of the agreement to arbitrate

and is not to be resolved by the judiciary (see, Matter of County of Rockland [Primiano Constr. Co.], 51 NY2d 1).

The real question is whether New Jersey insurance requirements must be read into the Williams policy. New York's Insurance Law § 5103 (e) directs that every required policy of automobile liability insurance provide benefits at least in the minimum amount prescribed by the law of any State in which the vehicle is operated. Supplementing the statutory language is a regulation of the Superintendent of Insurance which mandates that every such policy shall provide "at least the minimum amount and kind of coverage which is required" for such vehicle in any other State and that any policy which does not include a provision to this effect shall be deemed to so provide (11 NYCRR 60.1 [e]; emphasis supplied). The issue is whether these directives import into Williams' New York insurance policy the uninsured motorist coverage required of vehicles registered in New Jersey, thereby permitting him to recover under his policy regardless of physical contact. We believe they do.

Although New Jersey's mandatory automobile insurance provisions extend only to vehicles registered or principally garaged in that State (see, NJ Rev Stats §§ 39:6A-3, 39:6B-1), New Jersey law provides for the imposition of certain financial burdens and sanctions upon out-of-State drivers who have accidents in New Jersey and who lack an "automobile liability policy" (see, NJ Rev Stats § 39:6-25 [c] [2]). In such event, an out-of-State driver may be required to post security for any judgment which may result (NJ Rev Stats § 39:6-25 [a]) and failure to do so may cause suspension of his operating privileges (NJ Rev Stats § 39:6-25 [b]). In Country-Wide Ins. Co. v Rodriguez (55 NY2d 162, cert denied 457 US 1118), similar requirements of North Carolina law were held to incorporate that State's mandatory minimum amount liability insurance into the New York insurance policy of a New York driver whose passengers were injured in an accident in North Carolina. At the root of the court's holding was its belief that the Legislature's purpose in enacting Insurance Law former § 672 (5) (now § 5103 [e]) was to protect owners or occupants of New York automobiles against out-of-State sanctions when they venture across State lines.

Here, of course, the minimum amount of monetary coverage is not the problem, but in deciding whether uninsured motorist coverage required by New Jersey law is to be read into a New York policy if the accident occurs in New Jersey, the

applicable principle is the same. The New Jersey statute does not define the kind of coverage an "automobile liability policy" must contain for an out-of-State driver to avoid sanctions in the event of an accident, except to state the minimum amount of liability coverage that must be provided. The New Jersey Supreme Court has declared, however, that the term "automobile liability policy" has but one meaning in the context of New Jersey's mandatory insurance scheme, and that is a policy which satisfies the minimum standards for a motor vehicle insurance policy issued in that State (see, Selected Risks Ins. Co. v Zullo, 48 NJ 362, 225 A2d 570). Uninsured motorist coverage is a required part of the New Jersey liability policy (NJ Rev Stats §§ 17:28-1.1, 39:6A-14) and is considered an integral part of New Jersey's mandatory insurance scheme (see, Brokenbaugh v New Jersey Mfrs. Ins. Co., 158 NJ Super 424, 386 A2d 433, 438). Therefore, if a New York vehicle must be covered by an "automobile liability policy" to shield its owner or driver from sanctions in the event of an accident in New Jersey, the uninsured motorist coverage in the New York policy must comply with New Jersey requirements. Since a New Jersey policy must provide such coverage without a showing of physical contact (Perez v American Bankers Ins. Co., 81 NJ 415, 409 A2d 269, supra), Williams' policy must be deemed to provide him with the same coverage.

A significant component of our conclusion is the regulation of the Superintendent of Insurance which specifically requires incorporation into New York automobile insurance policies of both the amount and kind of insurance required by any State in which the vehicle is traveling at the time of an accident (11 NYCRR 60.1). The authority of the Superintendent of Insurance to promulgate such a regulation rests not only upon his general power to interpret the provisions of the Insurance Law (Insurance Law § 301 [c]) but also upon his specific power to define the contents of a mandatory policy (Vehicle and Traffic Law § 311 [4] [a]). Such administrative regulations have the force and effect of law and are to be enforced by the courts unless arbitrary (Molina v Games Mgt. Servs., 58 NY2d 523, 529).

Finally, since an insurance policy is a unified whole and is to be interpreted that way (see, Murray Oil Prods. v Royal Exch. Assur. Co., 21 NY2d 440, 445), the requirements of the New Jersey uninsured motorist endorsement that the insured submit a statement under oath within 30 days of the accident

is also incorporated into the New York policy. Williams submitted such a statement 65 days after the accident and Allcity properly raised the untimeliness issue for the first time in its reply since the New York endorsement contains a more lenient 90-day requirement, and Williams' contentions relative to New Jersey law first appeared in his answer to the stay motion. The stricter New Jersey requirement does not furnish a basis for the stay, however, since in that State, in order to deny benefits based on the untimeliness of the statement, the insurer must establish that it has been prejudiced *(see, Colangelo v Bankers & Shippers Ins. Co.,* 185 NJ Super 205, 447 A2d 1356; *Conklin v Heymann,* 124 NJ Super 227, 305 A2d 820; *see also, Cooper v Government Employees Ins. Co.,* 51 NJ 86, 237 A2d 870),* and this has not been done.

It is obvious, then, that we disagree with the holding of the Appellate Division, First Department, that the uninsured motorist coverage required in New Jersey should not be incorporated into a New York policy *(see, Matter of Allstate Ins. Co. [Walsh],* 99 AD2d 987, *affg* 115 Misc 2d 907 *on opn of Lehner, J., at Special Term).* Our reading of *Country-Wide Ins. Co. v Rodriguez* (55 NY2d 162, *supra)* is broader than that of the *Allstate* court; we believe that *Country-Wide* established that the Legislature's purpose in enacting what is now Insurance Law § 5103 (e) was protection of drivers and owners of New York vehicles from vagaries of mandatory insurance requirements in other States. The Superintendent of Insurance obviously shares our view.

Nor do we perceive the issue to pose a choice of law problem as our colleagues in the First Department addressed it. Were choice of law the issue, the predominance of contacts with New York would clearly preclude the application of New Jersey law *(see, Colonial Penn Ins. Co. v Minkoff,* 40 AD2d 819, *affd* 33 NY2d 542). As we view the matter, however, the issue is the meaning of the New York insurance policy, a meaning that cannot be ascertained without considering the requirements of the New York Insurance Law and the regulations promulgated under it. Since the Insurance Law and the regulations mandate that under circumstances like the instant ones the requirements of New Jersey law be incorporated into the New York contract, there can be no question of choosing between the laws of two States. The law of one is incorporated into the law of the other.

Accordingly, there should be a reversal and the application for a stay should be denied.

MOLLEN, P. J., MANGANO and THOMPSON, JJ., concur.

Ordered that the judgment of the Supreme Court, Nassau County, entered April 26, 1985, is reversed, on the law, with costs, the application pursuant to CPLR article 75 to permanently stay arbitration is denied, and the parties are directed to proceed to arbitration.