OPINION OF THE COURT
Joseph J. Sedita, J.
Tragedy struck unexpectedly during a family bicycle outing in Ontario, Canada. Plaintiff, Regina Smith, was hit by an uninsured Ohio vehicle and suffered severe injuries. Her son-in-law was killed in the same accident. She and her husband, plaintiff David Smith, are residents of the State of New York and drive a New York registered vehicle which was insured by the defendant in New York. The vehicle was parked at an Ontario (Canada) campground utilized by the plaintiffs when the accident occurred.
Plaintiffs’ New York coverage limited recovery under its uninsured motorist provision to $10,000 and the defendant tendered a check for this amount to the attorneys for the plaintiffs. The plaintiffs had previously signed a settlement form submitted by the insurance company. Prior to delivery to the plaintiffs, or depositing the proffered check, the plaintiffs’ attorney became aware of possibly higher coverage limits under Province of Ontario law. (See, Compulsory Automobile Insurance Act, Ontario Rev Stat, ch 83, § 1 [c]; Insurance Act, Ontario Rev Stat, ch 218, § 219 [1]; Ontario Rev Regs, reg 535; Ontario Rev Stat, ch 218, schedule C.)
The plaintiffs’ attorney held the check and communicated their claim of increased coverage to the defendant. Defendant has taken the position that the automatic coverage increase *320 only applies to third parties who might have been injured by the plaintiffs’ vehicle, but not to first-party benefits. Both sides seek summary judgment as to the issue of liability. The issue raised by this case has not been clearly resolved by case law.
Two initial questions must be dealt with. The first is whether the defendant can be held liable in any way for an accident to a policyholder who is hit by an uninsured vehicle while traveling on a bicycle. The second is whether the plaintiffs are precluded from seeking -additional compensation due to their having signed an insurance company release form.
The first issue is easily resolved. Ontario and New York mandate coverage in situations where the covered vehicle is not directly involved in the accident. (See, Compulsory Automobile Insurance Act, Ontario Rev Stat, ch 83, § 1 [c] [iii]; Insurance Law § 3420 [¶] [1].)
The second issue is perhaps more difficult. The insurance company form signed by the parties referenced receipt of moneys in full settlement of any claims. However, all parties agree that the proffered check was never deposited, or cashed by the plaintiffs, but only received by their attorneys incident to an anticipated resolution of the claim. The check was returned to the defendant, together with a cover letter, indicating that the proposed settlement of the claim was unacceptable. Plaintiffs’ counsel had previously written to the defendant explaining their position that the Canadian requirements were applicable under the terms of the policy and New York law. The plaintiffs never actually received the monetary consideration for the proffered settlement which would have sealed the bargain. A mere recital of consideration in the settlement agreement without actual receipt of consideration is insufficient to bind the parties. (See, 1 Corbin, Contracts § 130; 3 Corbin, op. cit., § 586.) The proposed settlement was rejected and the check returned before the bargain was fully "sealed”.
The real crux of the controversy before this court lies in an interpretation of the extent of uninsured motorist coverage and other first-party benefits for an insured New York resident traveling in Ontario. Plaintiffs seek to apply Ontario’s minimal requirements, while the defendant asserts that New York’s requirements, as reflected in their policy, should apply. We have found no case in point, and this appears to be a matter of first impression.
*321 The importance of automobile transportation to a highly mobile North American population has led to a complex grid-work of interlocking relationships which is reflected in State or provincial laws, governmental agreements with major insurance companies, and standardized insurance contracts. This grid-work of relationships facilitates the free flow of automobile transportation across boundaries while preserving State or provincial policy determinations and judgments as to the proper level of protection for its own citizens, and visitors traveling within their respective boundaries.
The over-all "scheme” of this grid-work of interrelationships appears to be the temporary adoption, by reference, of the local requirements as one crosses a border. Perhaps one could aptly describe the coverage as "chameleon” coverage which changes as one enters a new geographic and legal environment. This legislative intent and "scheme” has been recognized by our New York courts. (See, Country-Wide Ins. Co. v Rodriguez, 55 NY2d 162; Allcity Ins. Co. v Williams, 120 AD2d 1; O’Wyatt v New Hampshire Ins. Co., 53 AD2d 454.)
While the right to shifting "chameleon” coverage based on geographic jurisdiction for third-party coverage is rather clearly established, the right to shifting coverage for first-party benefits is less clear. We observe, however, that when one purchases uninsured motorist coverage, one, in effect, buys the right to have their carrier stand in the shoes of the uninsured tort-feasor at least to the extent of coverage. The insurance company, in effect, becomes a responsible financial surrogate for the uninsured tort-feasor.
Both New York and Ontario mandate uninsured motorist and "no-fault” coverage. (See, Insurance Law § 3420 [¶] [1]; Compulsory Automobile Insurance Act, Ontario Rev Stat, ch 83, § 1 [c] [iii].) The object of this policy by both New York and Ontario would appear to be the avoidance of situations where an innocent accident victim is forced to bear both the trauma and pain of an accident, and the personal financial catastrophe which may result.
In exercising their best judgment and sovereign prerogatives, Ontario’s lawmakers have determined that those persons falling under their jurisdiction should be protected to the extent of at least $200,000 (Canadian), and be provided with certain other minimal benefits (Ontario’s version of "no-fault” coverage). (Compulsory Automobile Insurance Act, Ontario Rev Stat, ch 83, § 1 [c]; Insurance Act, Ontario Rev Stat, ch 218, § 219; schedule C.)
*322 The regulations of the New York State Superintendent of Insurance set forth the following requirements:
“An 'owner’s policy of liability insurance’ shall contain in substance the following minimum provisions or provisions which are equally or more favorable to the insured * * *
"(e) A provision that when a motor vehicle is used or operated in any other state or Canadian province, a policy currently in effect or hereafter issued shall provide at least the minimum amount and kind of coverage which is required in such cases under the laws of such other jurisdiction. Any policy not containing such provision shall nevertheless be deemed to provide such coverage.” (11 NYCRR 60.1; emphasis added.)
A plain reading of the above references would lead one to conclude that applicable law mandates minimal coverage, and will require a reading of these requirements into New York policies which do not contain them. It is also clear that New York law mandates a recognition of the minimum requirements of sister States and Canadian provinces. Said minimum requirements include uninsured motorist coverage and other minimum first-party benefit requirements. (As noted supra.)
We conclude that the scheme and intent of the applicable laws and regulatory grid-work is insurance coverage that adjusts and flexes as the vehicle and covered individuals pass through State and province boundaries. If first-party and uninsured motorists benefits are excluded from the application of the shifting coverage approach then responsible premium paying motorists would be treated as a separate and unequal class of motorists less in need of the protections afforded by the jurisdiction within which they are traveling. We cannot find a basis for such a conclusion.
It is our considered opinion that the intention of the applicable Ontario statutes was to require a minimum level of protection for all categories of potential accident victims. We additionally conclude that applicable New York law mandates shifting coverage which looks to the location of the accident rather than the origination of the insurance policy in determining applicable minimum coverage requirements. Leading cases point strongly in the direction of the above conclusion. (See, Country-Wide Ins. Co. v Rodriguez, supra; Montgomery v Daniels, 38 NY2d 41; Allcity Ins. Co. v Williams, supra; O’Wyatt v New Hampshire Ins. Co., supra; Ohio Cas. Ins. Co. v Continental Ins. Co., 101 Misc 2d 452.)
*323 It is our considered opinion that the minimum coverage requirements of the Province of Ontario shall be deemed to be incorporated in the applicable policy coverage of the plaintiffs at the time of the accident herein. Monetary limits would, of course, have to reflect the exchange rate on the Canadian dollar on the date of the accident.
Accordingly, the motion of the plaintiffs for summary judgment on the issue of liability and applicable law is granted in accord with this decision. The motion of the defendants is denied except as to plaintiffs’ claim for punitive damages for which no sufficient basis has been found by this court.