OPINION OF THE COURT
David B. Saxe, J.
This proceeding to stay arbitration of an underinsured motorist claim presents a novel issue which requires the court *760 to distinguish between and compare uninsured motorist coverage with "underinsured” motorist coverage.
The respondent James Richards, a Montana resident with automobile insurance purchased from petitioner Allstate, was injured in a two-vehicle accident in this State, and asserts that the offending vehicle was underinsured. He has demanded arbitration of his claim for underinsured motorist coverage under his insurance policy, obtained in the State of Montana, which provides for uninsured motorist coverage in the amount of $25,000 for bodily injury to one person. Richards takes the position that the monetary limits of his Montana policy’s uninsured motorist provision automatically translates into supplementary uninsured motorist insurance (SUMI or underinsured motorist coverage) in this State.
Allstate seeks a permanent stay of arbitration, contending that because Richards’ Montana policy does not contain an underinsured motorist endorsement, he has no right to arbitration on his demand for underinsured motorist coverage.
All New York automobile owners are statutorily required to carry liability insurance in a minimum amount of $10,000 for bodily injury to one person in one accident (see, Vehicle and Traffic Law § 311 [4] [a]; 11 NYCRR 60.1). In addition, Insurance Law § 3420 (f) requires that all New York State automobile insurance policies include uninsured motorist coverage which will pay the insured up to a maximum amount of $10,000 for injury to one person caused by an uninsured vehicle in this State. The statute lists the type of situations in which the coverage is triggered, as accidents caused by: an uninsured motor vehicle; unidentified motor vehicle which leaves the scene of an accident; a motor vehicle registered in this State as to which at the time of the accident there was not in effect a policy of liability insurance; a stolen vehicle; a motor vehicle operated without permission of the owner; an insured motor vehicle where the insurer disclaims liability or denies coverage; or an unregistered vehicle. (Insurance Law § 3420 [f] [1].) The purpose of this required coverage is "to give the same protection to a person injured by an uninsured motorist as he would have had if he had been injured in an accident covered by a standard liability insurance policy” (70 NY Jur 2d, Insurance, § 1518, at 424; see, Moffitt v Moffitt, 46 AD2d 944, 945 [3d Dept 1974]).
A person severely injured by an uninsured motorist will not be fully compensated for his or her injuries by the $10,000 *761 statutory uninsured motorist coverage. Nor will a severely injured person be fully compensated when injured by a motorist who is insured for liability only to the minimum statutorily required amount of $10,000 per person for bodily injury. For New York insureds who would like additional insurance protection, in case they are injured by an offending vehicle with either no coverage or only mandatory minimum liability coverage, Insurance Law § 3420 (f) (2) provides New York insureds with the option to purchase from their own carrier supplementary uninsured motorist insurance. Where it has been purchased, supplementary uninsured motorist coverage, commonly referred to as "underinsured” motorist coverage, applies when the liability limits of the offending vehicle are less than one’s own.
To illustrate how the underinsured coverage applies, assume a New York insured has purchased automobile liability insurance in the amount of $100,000 per individual and $300,000 per occurrence ($100,000/$300,000), and that the insured is then injured by another vehicle whose owner has liability coverage of $50,000/$100,000. The offending vehicle is, by definition, underinsured because its liability coverage is less than the liability coverage of the injured party (see, Maurizzio v Lumbermens Mut. Cas. Co., 73 NY2d 951). If — and only if— the injured insured has purchased underinsured motorist coverage, he may obtain additional benefits from his own insurer up to the amount of supplementary uninsured motorist insurance purchased, in addition to any amount obtainable from the insurer of the offending vehicle.
The two types of coverages may converge, and the case of Morris v Progressive Cas. Ins. Co. (662 F Supp 1489 [SD NY 1987]), illustrates how. In Morris, the insured increased his uninsured motorist coverage from a $10,000/$20,000 limit to a $100,000/$300,000 limit, and the court held that the insured had, in fact, purchased supplementary uninsured motorist insurance as defined by Insurance Law § 3420 (f) (2) (662 F Supp, at 1499, supra). It was not dispositive that the declarations page lacked a monetary limit specifically listed under the heading of "underinsured motorist” or "supplementary uninsured motorist” insurance, since in New York any amount of "uninsured motorist” coverage beyond the statutory maximum of $10,000/$20,000 was uncollectible and was better viewed as being underinsured motorist coverage (see, Morris v Progressive Cas. Ins. Co., supra, at 1497; see also, *762 Reichel v Government Employees Ins. Co., 66 NY2d 1000, 1004).
In this proceeding, James Richards purchased his automobile insurance policy in Montana, where he resided and where his automobile was registered. The declarations page of that policy provides for coverage of "25/50” listed under the heading "Uninsured Motorists”; the policy has no provision for or heading titled "Underinsured Motorists”. Among the policy definitions of "uninsured auto” are included "(1) a motor vehicle which has no bodily injury liability bond or insurance policy in effect at the time of the accident; (2) a motor vehicle covered by a bond or insurance policy which doesn’t provide at least the minimum financial sécurity requirements of the state in which your insured auto is principally garaged.” Richards’ liability coverage was for a maximum of $100,000 for bodily injury to one person in one accident. In contrast, the insurance policy on the offending vehicle had a liability limit of $50,000 for bodily injury to one person. Thus, by the definition applied in New York, the offending vehicle was "underinsured”. If the insured had purchased supplementary uninsured motorist insurance, it would be applicable.
Had Richards purchased his insurance policy in New York State, I would have considered the $25,000/$50,000 uninsured motorist coverage to have provided underinsured motorist coverage, employing the reasoning used in Morris v Progressive Cas. Ins. Co. (supra). However, the policy in question was purchased in Montana where, in contrast to New York uninsured motorist coverage of $25,000/$50,000 is a viable amount of protection in case of injury by an uninsured motorist: had the insured been injured by an uninsured vehicle, his Montana insurer would have been obligated to pay him up to $25,000 under the terms of the policy. Therefore, the reasoning of Morris v Progressive Cas. Ins. Co. (supra), is inapplicable here. Richards’ uninsured motorist coverage is fully collectible under the appropriate circumstances, and does not have to be deemed "underinsurance” in order to avoid being uncollectible.
Moreover, Montana does not statutorily require that insurance companies offer underinsured coverage (State Farm Mut. Auto. Ins. Co. v Estate of Braun, 793 P2d 253 [Mont 1990]), and it appears from the submitted policy endorsements that the petitioner insurance company does not choose to offer its Montana insureds the option of underinsured coverage.
*763 However, the accident at issue occurred in New York State, and the respondent points out that under certain circumstances insurance coverage is altered by the courts so as to provide the insured with the minimum coverage required by the State or Province in which the accident occurred.
For instance in Country-Wide Ins. Co. v Rodriguez (55 NY2d 162), the insured’s coverage, obtained in this State, provided for a $10,000 liability limit for injury to one person. The insured was then involved in an accident in North Carolina, where a minimum liability limit of $15,000 is imposed. In view of former Insurance Law § 672 (5) (now § 5103 [e]), which requires liability coverage in the minimum amount required by any other State or Canadian Province when the vehicle is operated in such State or Province, the court declared that the insurer was required to provide the insured with $15,000 liability coverage (55 NY2d 162, supra).
Similar reasoning was applied regarding first-party benefits in Smith v Nationwide Mut. Ins. Co. (145 Misc 2d 318 [Sup Ct, Erie County 1989]). There the insured had obtained in this State uninsured motorist coverage with a $10,000 limit, then was hit by an uninsured motorist in Ontario. The court noted that Ontario requires a minimum of $200,000 coverage, and that regulations of the New York State Superintendent of Insurance require that: "When a motor vehicle is used or operated in any other state or Canadian province, a policy * * * shall provide at least the minimum amount and kind of coverage which is required in such cases under the laws of such other jurisdiction. Any policy not containing such provision shall nevertheless be deemed to provide such coverage.” (11 NYCRR 60.1 [e].) Accordingly, the court held the insurer liable to pay uninsured motorist benefits to its insured far in excess of the contracted-for limit, in accordance with the minimum coverage requirements of Ontario (Smith v Nationwide Mut. Ins. Co., 145 Misc 2d, at 322, supra; see also, Allcity Ins. Co. v Williams, 120 AD2d 1 [2d Dept 1986]; but see, Matter of Allstate Ins. Co. [Walsh], 99 AD2d 987 [1st Dept 1984], affg 115 Misc 2d 907).
From these cases, the respondent extrapolates the rule that the highest conceivable insurance protection should be afforded to any motorist having an accident in a sister State. His reading of these cases is unnecessarily broad. All of the above cases rely essentially on Insurance Law § 5103 (e) (formerly § 672 [5]), which requires a New York insurance *764 policy to provide the minimum coverage required by any other State in which the insured’s vehicle travels. None of the cases projects onto an out-of-State policy coverage which is optional in this State. There simply is no statutory authority for this court to alter the terms of this policy in the matter suggested, unlike the circumstances presented in Country-Wide (supra) and Smith (supra).
I note that the respondent-insured does not even refer the court to any Montana statute analogous to our Insurance Law § 5103 (e), requiring Montana insurers to cover their insureds when involved in accidents while operating their vehicles outside that State, to the same extent as mandated by the laws of those other jurisdictions. Even where such a law exists, however, the additional coverage imposed on the insurer has only extended to the minimum requirements of the sister State’s laws (see, O’Wyatt v New Hampshire Ins. Co., 53 AD2d 454 [2d Dept 1976]). The coverage sought by Richards is clearly more than New York’s minimum required coverage.
If the insured had been covered by supplementary uninsured motorist insurance, that coverage would clearly have been applicable here, since the offending vehicle had less liability coverage than the insured. However, he did not purchase such coverage, and none of the authorities relied upon by the respondent supports the judicial alteration of his policy’s terms so as to impose such coverage.
I agree with the petitioner. The parties did not agree to arbitrate as to underinsured motorist claims, since no such coverage was ever contracted for, nor is it statutorily available. Therefore, the 20-day time limit in which to serve a petition to stay arbitration pursuant to CPLR 7503 (c) does not apply (see, Matter of Matarasso [Continental Cas. Co.], 56 NY2d 264; Matter of Continental Ins. Co. v Sarno, 128 AD2d 870 [2d Dept 1987]).
Consequently, the petition to permanently stay arbitration is granted.