GLENS FALLS INSURANCE COMPANY *v.* MARIA F. SYBALSKY ET AL.

MARIA F. MASON ET AL. *v.* GLENS FALLS INSURANCE COMPANY
(AC 16479)

Dupont, C. J., and O'Connell and Lavery, Js.

Argued June 5—officially released August 19, 1997

*Christopher W. Bromson*, for the appellants (defendants in the first case, plaintiffs in the second case).

*Lloyd D. Pedersen*, for the appellee (plaintiff in the first case, defendant in the second case).

*Opinion*

LAVERY, J. The plaintiffs in the second case, Maria Mason Sybalsky and Julia Sybalsky,[1] appeal from the judgment of the trial court denying their application to correct an arbitration award and granting the defendant's application to correct the award. On appeal, the plaintiffs contend that the trial court incorrectly incorporated Connecticut's minimum underinsured motorist coverage requirements, as determined by New York law, into the plaintiffs' insurance policy, which was issued by the defendant. We affirm the judgment of the trial court.

---

[1] We refer in this opinion to Glens Falls Insurance Company as the defendant and to Maria Mason Sybalsky and Julia Sybalsky as the plaintiffs. Two actions were filed in the trial court, both seeking to correct the same award. There was one judgment file and one appeal by the plaintiffs, whose application to correct was denied.

The following facts and procedural history are necessary for the resolution of this appeal. On May 30, 1991, the plaintiffs were injured in a two car automobile collision with an underinsured driver, David Emery. At the time of the collision, the plaintiffs were insureds under a certain automobile policy issued by the defendant, which had been executed in New York. The insurance policy at issue provided for $50,000 in underinsured motorist coverage and $340,000 in liability coverage per occurrence. The plaintiffs had four vehicles insured under this policy.

Subsequent to the collision, the defendant maintained that, under the policy at issue, its underinsured motorist obligations had a limit of $50,000. The plaintiffs, however, contended that they were entitled to $1,360,000 in underinsured motorist coverage, as a function of "stacking" the $340,000 coverage on each of their four insured vehicles. Pursuant to the terms of the policy, the plaintiffs' claim was submitted to arbitration. At arbitration, the plaintiffs argued that since the collision occurred in Connecticut, the New York insurance contract should be reformed to reflect the underinsured motorist benefits of $340,000 per accident, which is the amount of liability coverage purchased by the plaintiffs. In addition, the plaintiffs continued to assert that they had $1,360,000 available to them for underinsured coverage as a result of their stacking. By a two to one vote, the arbitration panel concluded that the defendant, pursuant to the insurance contract, had to provide the plaintiffs with $340,000 in underinsured motorist coverage, which was the equivalent of the policy's liability coverage. The arbitrators also ruled that stacking did not apply.

Both parties filed applications in the Superior Court, the defendant to correct the panel's decision, and the

plaintiffs to vacate that decision. After hearing argument on the matter, the trial court granted the defendant's application to correct. The trial court held that, pursuant to the insurance contract, the total underinsured motorist coverage available to the plaintiffs was $50,000. The plaintiffs now appeal the judgment of the trial court.

On appeal, the plaintiffs contend that New York law requires New York insurance policies to incorporate the minimum underinsured motorist requirements from Connecticut. Therefore, the plaintiffs argue that Connecticut law requires that New York insurance policies provide, at a minimum, underinsured motorist coverage equal to the policies' liability limits. The plaintiffs finally assert that Connecticut law requires insurance policies to provide "stacked coverage" for each of the insured's vehicles. We disagree.

The parties have stipulated, and we conclude, that the law of New York controls the construction of the insurance contract at issue, having been executed in New York. Here, the relevant New York statute pertaining to liability insurance provides: "Every owner's policy of liability insurance . . . shall also provide, when a motor vehicle covered by such policy is used or operated in any other state or in any Canadian province, insurance coverage for such motor vehicle at least in the minimum amount required by the laws of that state or province." N.Y. Ins. Law § 5103 (McKinney 1985).

In the present case, the insurance policy issued by the defendant complies with New York law, as reflected in its "Out of State Coverage" provision. That provision provides: "If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has: 1. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit. 2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage."

Applying New York law to the present case, we find *American Transit Ins. Co.* v. *Abdelghany*, 80 N.Y.2d 162, 603 N.E.2d 947, 589 N.Y.S.2d 842 (1992), controlling on the issue of minimum underinsured motorist coverage. In *American Transit Ins. Co.*, the New York Court of Appeals addressed whether a New York insurance policy required that New York insureds be provided minimum uninsured motorist coverage beyond that provided in New York if that vehicle was being operated in a state that imposed greater minimum underinsured motorist requirements on its residents. Id., 164. The New York Court of Appeals stated: "In sum, we hold that New York law requires insurers to provide the minimum uninsured motorist coverage prescribed by the laws of the State in which the accident occurred. The purpose of Insurance Law § 5103 (e) is to protect New York insureds by assuring that, notwithstanding any New York law to the contrary, the minimum insurance coverage required under the laws of the situs of the accident will apply." Id., 168–69.

In addition, the New York Court of Appeals in *Country-Wide Ins. Co.* v. *Rodriguez*, 55 N.Y.2d 162, 163, 433 N.E.2d 118, 55 N.Y.S.2d 135 (1982), found that the minimum amount of coverage required for an accident is that which is stated in the Vehicle Responsibility Act of that state. In that case, a New York driver driving a New York registered car in North Carolina had an automobile liability policy with a minimum of $10,000

for injuries to one person and $20,000 for all persons injured in a single accident. Id. The North Carolina Financial Responsibility Act required all cars registered in North Carolina to have minimum coverage of $15,000 per person and $30,000 per accident, and out-of-state drivers have to show proof of at least that amount of coverage within twenty days of an accident or have their license suspended. The New York Court of Appeals in holding that the insurance company had to pay for the higher coverage for an accident that occurred in North Carolina reasoned that New York insurance law required coverage in the amount a North Carolina citizen would need to register a car in North Carolina. Id.

Similarly, in *Smith* v. *Nationwide Mutual Ins. Co.*, 181 App. Div. 2d 342, 343, 585 N.Y.S.2d 899 (1992), the New York Supreme Court Appellate Division held that since Ontario, Canada's Compulsory Automobile Insurance Act had a minimum requirement of $200,000 of uninsured motorist coverage, that the limits of $10,000 of uninsured motorist coverage in the insured's New York policy became $200,000 for the accident in Ontario. The court reasoned that it was not a case where the plaintiffs sought to create otherwise unavailable coverage by applying the law of Ontario, rather they sought to apply Ontario's minimum coverage with respect to the same type of insurance that now exists in their New York policy. Id., 344–46.

We therefore conclude that the language of the insurance contract, § 5103 of the New York Insurance Law (McKinney 1985), and New York case law obligate the defendant to provide only the minimum underinsured motorist coverage required by Connecticut.

We next turn to the law of Connecticut to determine the minimum required underinsured motorist coverage that the defendant must provide for the plaintiffs. General Statutes § 38a-336 (a) (2) provides in pertinent part:

"Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy . . . shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless any named the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. . . ." General Statutes § 14-112 (a) provides in relevant part that "the commissioner shall require from such person proof of financial responsibility to satisfy any claim for damages by reason of personal injury to, or the death of, any one person, of *twenty thousand dollars*, or by reason of personal injury to, or the death of, more than one person on account of any accident, of at least *forty thousand dollars* . . . ." (Emphasis added.) The Connecticut Supreme Court has considered General Statues § 38a-336 in conjunction with § 14-112 holding that they mandate $20,000 in underinsured motorist coverage per person and $40,000 per accident. See *Kelly* v. *Fiqueiredo*, 223 Conn. 31, 39–40, 610 A.2d 1296 (1992); *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 474, 370 A.2d 1011 (1976).

Because Connecticut's minimum required underinsured motorist coverage is $20,000 per person and $40,000 per accident, we will not read into the plaintiffs' New York insurance policy an amount higher than that required by Connecticut law. Therefore, since the plaintiffs purchased $50,000 worth of underinsured motorist coverage from the defendant, the trial court was correct in finding that that amount met Connecticut's minimum underinsured motorist requirements, and was the correct amount to award the plaintiffs under this policy.

We disagree with the plaintiffs' contention that § 38a-336 mandates that the plaintiffs are entitled to the equivalent of their liability insurance under the policy issued by the defendant. There is nothing in § 38a-336 or § 14-112 requiring that underinsured motorist coverage must

be maintained by Connecticut motorists beyond that prescribed by those statutes. The plaintiffs argue that they are entitled to $340,000, the amount of liability coverage purchased under the insured's contract, since they did not formally elect lesser coverage in writing pursuant to § 38a-336. Our Supreme Court construed that statute in *Nationwide Mutual Ins. Co.* v. *Pasion*, 219 Conn. 764, 770–71, 594 A.2d 468 (1991), stating that "[t]he apparent intent of the legislature in adopting subdivision (2), as evidenced by the legislative history of Senate Bill 123, was to assure that consumers purchasing automobile liability insurance would be made aware of the low cost of equal amounts of uninsured coverage by requiring any reduction in that coverage to be in writing."

We refuse to construe this statute as requiring out-of-state drivers to make a written election to request underinsured motorist coverage in an amount less than their policy's liability coverage. In the present case, the plaintiffs, who executed their insurance policy in New York and had registered and garaged their vehicles in New York, were not required to make a written request for a lower amount of coverage, as prescribed by § 38a-336. We therefore agree with the trial court in its reduction of the amount of coverage to be provided by the defendant from $340,000, which was the policy's liability limit, to the $50,000 worth of underinsured motorist coverage that the plaintiffs had purchased.

We finally disagree with the plaintiffs contention that their coverage for each of their automobiles should be aggregated or stacked, providing $1,360,000 worth of coverage on four cars that were each insured for $340,000. In *Kent* v. *Middlesex Mutual Assurance Co.*, 226 Conn. 427, 432–33, 627 A.2d 1319 (1993), our Supreme Court held: "[W]e have found stacking to be available when the insured has paid separate premiums for the underinsured motorist coverage afforded to each

vehicle. . . . The reason for this is the common sense notion that such a result falls within the reasonable expectations of the parties to the insurance contract . . . because an insured who pay[s] a double premium [can reasonably] expect double coverage. . . . We have noted that [t]his is particularly true when each of the insured vehicles is separately described, the coverage granted under the policy is separately listed for each vehicle, and a separate premium is charged for the coverage afforded to each of the described vehicles." (Citations omitted; internal quotation marks omitted.)

In the present case, the arbitrator's panel correctly concluded that the plaintiffs did not have a reasonable expectation that their coverages would be stacked when they purchased their insurance policy from the defendant. The plaintiffs did not pay separate premiums that would entitle them to aggregate coverage. Furthermore, stacking is not permitted in New York, where the contract was executed; *Sisson* v. *Travelers Ins. Co.*, 94 App. Div. 2d 953, 464 N.Y.S.2d 77 (1983); and the insurance policy at issue expressly excluded stacking. For the foregoing reasons, we conclude that the plaintiffs are not entitled to stacked or aggregate coverage.

The judgment is affirmed.

In this opinion the other judges concurred.