[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In the above-captioned case, the plaintiff, Michael Ramcke seeks benefits under uninsured/underinsured motorist insurance coverage provided to his employer, MS Carriers, Inc. by the Insurance Company of North America. Though the plaintiff had originally sued CIGNA Insurance Company, he abandoned his claims against that party by filing a second amended complaint that omitted any claims against that party.
The case was claimed to the jury trial list, however the parties stipulated to trial to the court of the threshold legal issue of whether the plaintiff is a covered person pursuant to the uninsured/underinsured motorist coverage of the insurance policy issued by the Insurance Company of North America ("INA") to MS Carriers, Inc. The parties further stipulated that the issues would be presented by filing a joint stipulation of facts and exhibits, such that this court will decide the issue of coverage on the basis of those submissions. The parties duly filed the factual stipulations, exhibits, and briefs on April 15, 1998. They stipulated that if coverage is found, the remaining issues, that is, fault in causing the collision, causation and damages shall be tried to a jury.
Stipulated Facts Concerning Coverage Issue
On July 16, 1994 in Westbrook, Connecticut, the plaintiff was operating an uninsured motorcycle owned by a friend. The plaintiff, who was a resident of Connecticut at the time of the accident, was not licensed to operate a motorcycle. The vehicle with which he and the motorcycle collided was owned by Ferdinand Luca. The plaintiff has received the full $100,000 of liability CT Page 7725 coverage provided to the driver of the Luca vehicle by ITT Hartford.
For the eight weeks prior to the date of the motorcycle accident in Connecticut, the plaintiff had been employed by the defendant MS Carriers, Inc. as an on-the-road truck driver. The plaintiff was assigned a tractor that he picked up on May 21, 1994 at a terminal in Pennsylvania operated by M.S. Carriers. At the time of the collision on July 16, 1994, the plaintiff was not engaged in the scope of his employment with M.S. Carriers and he was not occupying a vehicle owned or insured by M.S. Carriers.
The parties have stipulated that except in cases of emergency, trucks owned by M.S. Carriers are serviced and maintained at M.S. Carrier terminals, none of which is located in Connecticut. From May 21, 1994 to the date of the collision, the plaintiff operated the truck assigned to him on various routes in the mid-Atlantic and northeastern states. At least five days a week, his trips began and ended in locations outside the State of Connecticut. On interstate trips, the plaintiff slept at M.S. Carriers' terminals, in motels, or in the sleeper berth of his tractor.
The plaintiff made home visits to his parents' house in Ivoryton, Connecticut one or two nights a week. On those occasions, he parked the tractor mostly at his father's auto sales business. When at home, the plaintiff usually used his parents' vehicles for local transportation. On occasion, he used the tractor for personal purposes during home visits, however he never sought or obtained permission from M.S. Carriers to do so, even though such permission was explicitly required by M.S. Carriers. Between May and June 16, 1994, the plaintiff did not own a vehicle of his own.
As of July 16, 1994, the tractor assigned to the plaintiff was a covered auto under a Business Auto Policy ISA2451, issued by M.S. Carriers. The INA policy provided uninsured/underinsured motorist ("UM") coverage for the nine states where M.S. Carriers had truck terminals or where M.S. Carriers registered vehicles. In those states, including Tennessee, M.S. Carriers rejected UM coverage where it was permitted to do so and chose minimum limits in the states that required them. M.S. Carriers has never registered the tractor at issue or any other motor vehicle in Connecticut, nor has it operated a truck terminal or any other place of business in Connecticut. M.S. Carriers did not seek, and CT Page 7726 INA did not provide, UM coverage for the state of Connecticut.
Is the Defendant Subject to Connecticut UM Requirements?
Each and every vehicle of the tractor fleet of M.S. Carriers, including the tractor used by the plaintiff, was registered in a state other than Connecticut. The insurance policy was issued to M.S. Carriers at its principal place of business in Tennessee. The plaintiff argues that the defendant is subject to the UM coverage requirements of Connecticut statutes because the tractor was principally garaged in Connecticut. While the plaintiff has characterized the issue as one of contract interpretation, the issue may also be characterized as a determination whether Connecticut requirements concerning UM coverage apply.
Conn. Gen. Stat. § 38a-334 provides that the insurance commissioner shall adopt regulations "with respect to minimum provisions to be included in automobile liability insurance policies issued after the effective date of such regulations and covering . . . motor vehicles with a commercial registration . . . registered or principally garaged in this state." The same statute makes mandatory the inclusion of the mandated minimum coverages, including uninsured motorist coverages.
It has been stipulated that the M.S. Carriers' tractor that the plaintiff had been driving on his job for approximately eight weeks was not registered in Connecticut. Pursuant to § 38a-334, it was subject to Connecticut UM requirements only if it was "principally garaged" in Connecticut. See Berk and Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage, Sec. 1.91., p. 55: "The Connecticut statutes are applicable to vehicles that are `principally garaged' in the state."
The stipulated facts indicate that the tractor at issue was not principally garaged in Connecticut. It is not alleged that the plaintiff had leased the tractor from the defendant or that it was permanently assigned to him for use as his vehicle for all purposes. It was not a vehicle leased by an out-of-state owner to a Connecticut resident for the resident's own use as in Fournierv. Shaklen Corp. , 11 Conn. L. Rptr. 442, 443 (1994).
While the plaintiff was permitted to park the tractor in the vicinity when he spent his time off at his parents' home in Connecticut, the tractor was not to be used for personal CT Page 7727 transportation without express permission by the defendant. If he happened to be in another vicinity during time off, he parked the tractor in whatever location he was in. Unlike the owner of the passenger vehicle at issue in Chalef v. Ryerson, 648 A.2d 1139
(N.J. App. Div..) (1994), a case on which the plaintiff relies, the plaintiff had no ownership or lessee's interest in the vehicle, and there is no basis for regarding the property of the defendant as being principally garaged at the home of an employee who merely was assigned it as a piece of equipment to use while he was performing the duties of his job.
The statutory term "principally garaged" must be interpreted according to the ordinary meaning of those words.Vaillancourt v. New Britain Machine/Litton, 224 Conn. 382, 390-391
(1993); Caltabiano v. Planning Zoning Commission,211 Conn. 662, 666 (1989). "Principal" is defined in Black's Law Dictionary, (6th ed) as "chief, leading, most important or considerable, primary; original." "Principally" is defined in Webster's Third International Dictionary as follows: "in a principal manner; in the chief place or degree; primarily, chiefly, mainly."
During an eight week period, the tractor was in Connecticut along with the plaintiff during one or two days of each of these weeks. The tractor was at whatever location out of Connecticut that the plaintiff happened to be in when his driving hours concluded on the other five or six days each week. It was serviced at M.S. Carriers' facilities outside Connecticut except in cases of emergency. Even assuming that the parking location of a vehicle during an eight week period constitutes "garaging" the vehicle, since the tractor was in Connecticut less than half the time when it was so "garaged" rather than driven, there is no logical basis for regarding Connecticut as the place where it was "principally" garaged, especially since its owner, the defendant, had no business location in Connecticut.
Contrary to the plaintiff's interpretation, Connecticut has not sought to require minimum uninsured motorist coverage of every vehicle that spends any time in Connecticut. The applicable statutes, on their face, apply only to insurance for vehicles registered or principally garaged in Connecticut. The tractor in question does not come within this coverage, and the defendant was not required to obtain uninsured/underinsured motorist coverage pursuant to Connecticut law. CT Page 7728
See, in accord, Glens Falls Ins. Co. v. Sybalsky,46 Conn. App. 313 (1997), in which the Appellate Court ruled that Connecticut UM election requirements did not apply to a policy insuring a vehicle garaged in New York.
Conclusion
For the foregoing reasons, this court finds the issue of coverage in favor of the defendants. Judgment shall enter in favor of both defendants.
BEVERLY J. HODGSON Judge of the Superior Court