680 A.2d 901

**John BAMBER, Appellant,**

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY, American Motorists Insurance Company, American Manufacturers Mutual Insurance Company and American Protection Insurance Company T/A Kemper National Insurance Companies, Appellees.**

Superior Court of Pennsylvania.

Argued June 18, 1996.

Filed July 30, 1996.

Joseph Monaco, Philadelphia, for appellant.

James C. Haggerty, Philadelphia, for appellees.

Before EAKIN, SCHILLER and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

In 1991, appellant John Bamber sustained a number of injuries following an automobile accident that allegedly occurred during the course of his employment. Bamber recovered the limits of the tortfeasor's liability insurance policy, and also recovered $15,000 of underinsured motorist (UIM) benefits from his own personal automobile insurance policy. On October 23, 1991, Bamber notified appellee Kemper National Insurance Company (Kemper) that he was also seeking UIM benefits under his employer's business auto insurance policy with Kemper.[1] When Kemper refused to pay, Bamber filed the instant action.

Kemper's defense in this action was that the Chamber of Commerce's business auto insurance policy simply did not provide underinsured motorist benefits. Relying on this argument, Kemper filed a motion for summary judgment. On December 26, 1995, the Honorable Russell M. Nigro granted Kemper's motion for summary judgment. Bamber filed the instant timely appeal from Judge Nigro's order.

 Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

1. Bamber was employed by the Chamber of Commerce of the United States of America.

party is entitled to a judgment as a matter of law." Pa. R.C.P.Rule 1035. Upon review, this Court will overturn a trial court's entry of summary judgment "only if there has been an error of law or a clear abuse of discretion." *Hoffman v. Brandywine Hospital,* 443 Pa.Super. 245, 250, 661 A.2d 397, 399 (1995).

Bamber argues that he is entitled to UIM benefits under the business auto policy issued to his employer, the Chamber of Commerce ("Chamber policy"). While Bamber concedes that the Chamber policy does not actually provide UIM coverage, he argues that such coverage should be provided by operation of Pennsylvania law. In attempting to establish the merits of this argument, Bamber first asserts that his vehicle was a "covered auto" under the Chamber policy when the vehicle was used in the course of Bamber's employment. Since his vehicle was covered by the Chamber policy and registered in Pennsylvania, Bamber argues, the Pennsylvania Motor Vehicle Financial Responsibility Law (PMVFRL) requires UIM coverage unless such coverage is specifically waived by the named insured. Given that no waiver was executed, Bamber concludes that the Chamber policy should be reformed to include UIM coverage in an amount equal to the level of liability coverage. After careful review, we agree with Bamber that his vehicle is covered under the Chamber policy, but do not agree that the PMVFRL requires Kemper to provide UIM coverage.

 Initially, we note that the interpretation of a contract of insurance is a matter of law to be decided by the courts. *E.g., Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 585–87, 640 A.2d 1234, 1235 (1994). Our primary purpose in interpreting such contracts is to "ascertain the intent of the parties as manifested by the language of the written agreement." *Id.* If the policy language is clear, such language is given effect by the court. *Id.* If the language is ambiguous, however, we will construe the agreement against the drafter. *Insurance Co. of Pennsylvania v. Hampton,* 441 Pa.Super. 382, 385–87, 657 A.2d 976, 978, *appeal denied,* 542 Pa. 647, 666 A.2d 1056 (1995).

■ In the Chamber policy, the declarations state that liability coverage is provided for autos falling within category "1." R.R. at 15. This category is described as including "Any 'Auto.'" *Id.* at 22. While the term "Any Auto" is not defined in the policy, the meaning of the term, as it is used in the policy, logically refers to all autos falling within the subsequent limited categories "2" through "9." Category "9" reads as follows:

> 9 = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

*Id.* Bamber's personal vehicle clearly falls into this category when it is used in the course of his employment with the Chamber of Commerce. Thus, Bamber's vehicle is a "covered auto" for purposes of liability coverage when the vehicle is used in the course of his employment.

Notwithstanding the category "9" description, Kemper argues that Bamber is specifically excluded from coverage by subsequent language. In section II(A)(1), the policy defines insureds as follows:

1. WHO IS AN INSURED

The following are "insureds":

 a. You for any covered "auto."

 b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

* * * * * *

 2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.

R.R. at 23. Despite Kemper's argument, we must agree with Bamber that he cannot be excluded by (b)(2) when he is not in the relevant class of people included in section (b). Section (b) states that it will insure permissive users of covered autos that are **owned, hired, or borrowed** by the Chamber of Commerce. As Bamber's personal vehicle was not owned, hired,

or borrowed by the Chamber of Commerce, this entire section, including the exclusions, does not apply.

■ Therefore, after review of the Chamber policy, we find that Bamber's vehicle is covered when it is used in the course of his employment. Nevertheless, our inquiry does not end here. While the Chamber policy does cover Bamber's vehicle for liability purposes, it does not explicitly provide UIM coverage. Bamber argues that UIM coverage is required, pursuant to section 1731(a) of the PMVFRL, because Bamber's vehicle is registered in Pennsylvania. We must disagree.

Section 1731(a) of the PMVFRL addresses the requirement of uninsured (UM) and UIM coverage as follows:

(a) **Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 Pa.C.S.A. § 1731(a). The language of this section requires UM and UIM coverage where a motor vehicle liability insurance policy is delivered or issued for delivery in this Commonwealth, for coverage of a vehicle registered or principally garaged in this Commonwealth. In the instant case, we must determine whether a motor vehicle liability insurance policy issued and delivered in Washington, D.C. comes within the purview of section 1731(a) because it provides liability coverage, under certain limited conditions, for a vehicle registered in Pennsylvania. We now hold that such a policy is not within the reach of section 1731(a).

■■ When construing a statute, our objective is to ascertain and effectuate the legislative intent. 1 Pa.C.S.A. § 1921(a). *See also Berger v. Rinaldi*, 438 Pa.Super. 78, 86–88, 651 A.2d 553, 557 (1994), *appeal denied*, 544 Pa. 641, 664

A.2d 971 (1995). In so doing, we must begin with a presumption that our legislature did not intend any statutory language to exist as mere surplusage. *Id.* Accordingly, "whenever possible, courts must construe a statute so as to give effect to every word contained therein." *Id.*

Instantly, section 1731(a) states that UM and UIM coverage must at least be offered for any policy "delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth." 75 Pa.C.S.A. § 1731(a). Giving meaning to all of this language, as we are required to do by our rules of construction, we cannot focus, as appellant does, solely on the fact that a "covered auto" is registered in Pennsylvania. While it certainly is relevant that a covered auto is registered in Pennsylvania, we must also determine whether the Chamber policy was delivered or issued for delivery in Pennsylvania.

In *Insurance Co. of Pennsylvania v. Hampton,* this Court interpreted the "delivered or issued for delivery" language of section 1731(a). 441 Pa.Super. at 387, 657 A.2d at 979. We held that a policy purchased in Delaware for a vehicle registered in Delaware was not delivered or issued for delivery in the Commonwealth. Thus, section 1731(a) was *not* applicable even though the covered vehicle was principally garaged in Pennsylvania. *Id.*

Similarly, the Chamber policy was purchased in Washington, D.C. for primary coverage of vehicles registered in Washington, D.C., Illinois, and California. While Bamber's personal vehicle was covered under the Chamber policy when it was used in the course of employment, such coverage was incidental to the primary purpose of the policy. This incidental coverage does not alter the fact that the policy was issued in Washington, D.C., for coverage of vehicles registered in Washington, D.C., Illinois, and California. Thus, pursuant to the analysis in *Hampton,* the Chamber policy was not "delivered or issued for delivery" in Pennsylvania, and section 1731(a) is inapplicable.

Since section 1731(a) of the PMVFRL did not require Kemper to offer UIM benefits in the Chamber policy, we have no basis upon which to reform the policy. The Chamber policy simply does not provide UIM benefits, and Bamber's claim for such benefits must therefore fail. Based on the foregoing, the trial court did not err in granting summary judgment in favor of appellees.

Affirmed.