## Bennison v. Nationwide Mutual Ins. Co.

C.P. of Pike County, no. 1067-1998.

*Charles Kannebecker,* for plaintiff.
*Lucille Marsh,* for defendant.

THOMSON, *P.J.,* June 14, 1999—This opinion addresses the motion for judgment on the pleadings by the defendant. The case revolves around an auto insurance contract, specifically, an uninsured motorist clause. Under the terms of the contract, plaintiffs are entitled to no compensation; however, they seek to have the uninsured motorist clause voided because it is invalid under Pennsylvania law, allowing them to obtain compensation. Defendant bases its motion on an attempt to enforce the terms of the contract as provided by the law under which it was written, New York. Having the benefit of an argument and the briefs by the parties, the court issues this

opinion in support of its order denying defendant's motion for judgment on the pleadings.

## FACTS

On November 5, 1995, plaintiff Deborah Bennison was a passenger in a vehicle owned by Bruce Graves of Marlboro, New York. While on a Pennsylvania roadway, Graves' car collided with a third party's car (also referred to herein as the tort-feasor). In an effort to obtain compensation for the damages suffered, plaintiffs have sought contribution from the uninsured motorist coverage for which they contracted with defendant. At the time of the contract at issue, the plaintiffs were domiciled in New York. The defendant issued plaintiffs' insurance policy out of New York. The plaintiffs registered their car in New York. In addition, the declaration sheet attached to the contract provided a New York address. By all appearances, the insurance policy appears to be in accordance with New York law.

The contract provides in relevant part that the company will provide the plaintiffs with uninsured motorist coverage if the tort-feasor's vehicle is uninsured. The contract defines an uninsured motor vehicle as a "motor vehicle that, through its ownership, maintenance or use, results in bodily injury to an insured, and for which . . . [t]here is bodily injury liability insurance coverage . . . at the time of the accident, but (i) the amount of such insurance coverage . . . is less than the third party bodily injury liability limit of this policy. . . ." See defendant's answer, exhibit A.

The defendant's motion for judgment on the pleadings arises from three basic admissions in the plaintiffs' reply. The first admission is that the negligent party's

vehicle was insured by State Farm Insurance Company with liability limits of $100,000 per accident, $300,000 per occurrence. (See plaintiffs' reply, paragraph 22.) In addition, plaintiffs have admitted that their own liability limits under the Nationwide policy are $100,000 per accident, $300,000 per occurrence. (See plaintiffs' reply, paragraph 21.) Plaintiff's also have admitted that they have cumulatively received $105,000 from the State Farm Insurance Company for the injuries sustained. (See plaintiffs reply, paragraph 25.) Defendant argues these admissions, when considered with terms of the contract, require that plaintiffs cannot receive uninsured motorist benefits because their bodily injury liability limit is the same as or greater than the limits available to the negligent party. Furthermore, defendant argues that New York law applies because the parties lived in New York when they entered into the contract, and they listed a New York State address on the declaration sheet incident to the contract.

## DISCUSSION

Although plaintiffs raised many issues against defendant's motion, the case appears to center on the legal issue of whether Pennsylvania or New York law applies to this contract. If New York law applies, the contract remains in effect denying the plaintiffs further coverage, however, if Pennsylvania law applies to certain terms of the contract, the subject provision of the contract would be invalidated. In contradiction to the facts noted above that indicate New York law would apply, plaintiffs cite two basic arguments supporting the position that Pennsylvania law should apply. Plaintiffs' first argument is that defendant is estopped from arguing that

New York law applies because of an admission in a previous pleading. Second, plaintiffs argue that Pennsylvania law should apply because choice of law principles require it, arguing Pennsylvania has more significant contacts with the parties and a greater interest as well. We will address each of these arguments in order and also address plaintiffs' other various arguments.

Before addressing those arguments, we note the various standards applicable to motions for judgments on the pleadings. A judgment on the pleadings may be entered where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1034. A motion for judgment on the pleadings is similar to a demurrer in that a court must confine its consideration to the pleadings and relevant documents. *E.g., Sejpal v. Corson, Mitchell, Tomhave & McKinley M.D.s Inc.,* 445 Pa. Super. 427, 665 A.2d 1198 (1995). A court cannot grant a motion for judgment on the pleadings unless there are no material facts at issue and the law is clear that trial would be a fruitless exercise. *Welsh v. City of Philadelphia,* 156 Pa. Commw. 299, 627 A.2d 248 (1993). With these standards in mind, we move on to address each of the arguments against defendant's motion.

I

Plaintiffs' first argument against a judgment on the pleadings is that defendant has admitted in a previous case that Pennsylvania law applies and is bound by that admission for the purpose of this case. Because Pennsylvania law applies, the uninsured motorist provisions of the contract should be invalidated, and, accordingly, the court should not grant judgment to defendant under

the terms of the subject contract. In an earlier action, involving this accident between these parties, the plaintiffs in their complaint averred:

"(4) That the policy of insurance issued by the defendant to the plaintiffs was to provide medical coverage to the plaintiff in the event that the plaintiff suffered injury as a result of an auto accident."

The defendant in its answer, responded as follows:

"(4) It is admitted only that the plaintiff had a policy of auto insurance policy [sic] issued by defendant which provided for certain first party benefits based upon the terms and provisions of the insurance contract, the Pennsylvania MVFRL and the applicable statutes and regulations of the Commonwealth of PA."

Defendant not only made this averment in its answer but also made the averment in its new matter, alleging Deborah Bennison's original cause of action was barred, reduced and/or limited by Pennsylvania law. Because defendant relied on Pennsylvania law previously, plaintiffs claim that the previous averments estop defendant from arguing that New York law governs the plaintiffs' current claim. In support of this position, plaintiffs cite *Gross v. City of Pittsburgh,* 686 A.2d 864 (Pa. Commw. 1996). "[T]he purpose of . . . judicial estoppel is to uphold the integrity of the courts by preventing parties from abusing the judicial process by changing positions as the moment requires." *Id.* at 867. "[A]s a general proposition, a party to an action is estopped from assuming a position inconsistent with his assertion in a previous action, if his contention was successfully maintained." *Associated Hospital Service of Philadelphia v. Pustilnik,* 497 Pa. 221, 227, 439 A.2d 1149, 1151 (1981), quoting *Giesey v. Cogan,* 118 Pa. Super. 464, 466, 179 A. 865,

866 (1935). Settling a case does not constitute successfully litigating a claim. 497 Pa. at 227, 439 A.2d at 1151. Furthermore, general averments in pleadings in an undetermined prior case do not operate in a subsequent case as an estoppel by record against a party making them. *Associates Discount Corp. v. Kelly,* 169 Pa. Super. 74, 82 A.2d 689 (1951).

In the instant case, defendant's averments as to the legal conclusion of which state's law applies are in complete contradiction to its averments in the previous case involving these parties. [1] However, plaintiffs presented the court with no reason why the court should believe defendant's averments in the last case benefitted defendant beyond what New York law would have provided. There is no record of any kind that indicates that defendant's previous averments in its answer and new matter benefitted it. Whether or not defendant actually benefitted from its legal argument in the previous case is unknown. Most importantly, the only recorded disposition of the case is that it was settled. The settlement of the case and unknown determining factors of its outcome prevent this court from making any finding that the matter was previously successfully litigated by the defendant, for inherent in the doctrine of judicial estoppel is previous successful use of a position. Thus, we find plaintiffs' use of the doctrine of judicial estoppel to be without merit because (1) the parties settled the previous claim and (2) the lack of any record of the success of plaintiffs' previous position. [2]

---

1. We note that defendant had different counsel for the first case.

2. We also note that some Pennsylvania courts have interpreted the doctrine of judicial estoppel to apply only to factual averments. *Prince George Center Inc. v. U.S. Gypsum Co.,* 33 Phila. 151 (1997) citing

## II.

Defendant's second argument is that through choice of law principles this court should apply Pennsylvania law. "The determination of the law governing the validity of contracts and the rights created thereunder has been recognized as one of the most difficult areas of conflict of laws." Robert A. Brazener, *Automobile Liability Policy: Choice of Law as to Validity of "Other Insurance" Clause of Uninsured Motorist Coverage,* 83 A.L.R. 3d 321. The general rule is that the interpretation of insurance contracts is governed by the laws of the state where the contract was made. *E.g., Jamison v. Miracle Mile Rambler Inc.,* 536 F.2d 560, 563 n.1 (3d Cir. 1976). The place a contract is made is the place that a contract was issued and delivered. *E.g., Graves v. Republic Insurance Co.,* 516 F. Supp. 424, 426 (E.D. Pa. 1981). In absence of a determination as to where a contract was delivered, Pennsylvania courts presume the insured's residence as being the place of delivery regarding a determination of which state's law governs. *Travelers Indemnity Co. v. Fantozzi,* 825 F. Supp. 80, 84 (E.D. Pa. 1993). The location of the tort is not relevant to a choice-of-law dispute over an insurance contract. *Assicuraioni Generali v. Clover,* 18 F. Supp.2d 550, 555 (W.D. Pa. 1998).

---

*Ryan Operations GP. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355 (3d Cir. 1996) (judicial estoppel being considered a substantive matter). This conclusion appears to arise from a holding that bad faith is required with judicial estoppel. *Id.* In that bad faith is required, a party cannot act in bad faith in taking a position on a legal argument in that a fraud cannot be committed on a court with a legal argument as it can with a factual one. *Id.* Although such an argument would also require a finding against the plaintiffs in this case, we did not rely on such reasoning for our decision.

Plaintiffs ask this court to forsake the traditional rules governing the interpretation of contracts. Plaintiffs' request to ignore these general principles has received some support in recent decades. 83 A.L.R. 3d 321, 323. Courts that have forsaken traditional contractual choice of law analysis have done so with an eye toward public policy. *Id.* The public policy motivating these courts has been the attempt to provide the insured with as much compensation as possible. In invalidating uninsured motorist provisions in contracts where a choice of law issue existed, courts have applied the law of the state with the more generous coverage requirements for the insured.

In attempting to determine Pennsylvania's preferences regarding choice of law analysis for uninsured motorist contracts, defendant cites the case of *Bamber v. Lumbermens Mutual Casualty Company,* 451 Pa. Super. 548, 680 A.2d 901 (1996). Defendant cites the case as holding that New York law should control in the instant case. In *Bamber,* the plaintiff suffered injuries after being in an automobile accident that allegedly occurred during the scope of his employment. *Id.* at 550, 680 A.2d at 902. After obtaining the liability limits of the negligent party's policy limit and the limit of his own underinsured motorist benefits, he sought underinsured motorist benefits from his employer's auto insurance policy. *Id.* The plaintiff's claim in *Bamber* was premised on his argument that underinsured motorist coverage had to be provided because no waiver was executed regarding such coverage as required under 75 Pa.C.S. §1731. *Id.*

In analyzing the viability of the plaintiffs' claim, and after determining the employer's insurance contract did cover the plaintiff, the Superior Court focused on the

applicability of 75 Pa.C.S. §1731. The court considered the facts that the insurance policy was issued and delivered in Washington, D.C. for primary coverage of vehicles in Washington D.C., Illinois, and California, but the vehicle in question was registered in Pennsylvania. *Id.* at 554, 580 A.2d at 904. The Superior Court focused on where the insurance contract was delivered or issued, as pursuant to the language of section 1731. *Id.* The court found that the registration of the car in Pennsylvania did not overcome the fact that the contract was executed in another state and the primary purpose of the policy was the coverage of vehicles out of state for the purposes of determining whether section1731 applied. *Id.* Thus, the Superior Court found section 1731 inapplicable.

Defendant distinguishes *Bamber* by arguing that the plaintiff in that case did not actually possess any underinsured motorist coverage through the employer's policy; thus, the Superior Court's ruling was on the applicability of section 1731 as to requiring an offering of such coverage not whether Pennsylvania law would apply to the determination of coverage that actually existed. Because a contract exists in this case that provides uninsured motorist coverage, plaintiffs argue that the facts relating to the contract should control any determinations regarding a choice of law. We agree with defendant's distinction of *Bamber;* however, we find the logic of the case to be of persuasive authority for the proposition that Pennsylvania law is not applicable to the contract in this case. As we find the case to be only of persuasive authority, we will endeavor on with a choice of law analysis between New York and Pennsylvania, for the most part without the help of *Bamber.*

When a possible choice of law issue confronts a court, the first step is to determine if a true conflict exists between the competing states. Plaintiffs argue that there exists no true conflict between Pennsylvania and New York regarding the limits set forth in an uninsured or underinsured motorist insurance contract. Plaintiffs' premise is that the law in New York sets forth a floor for uninsured/underinsured motorist coverage and, in the name of applying the law of the forum state (Pennsylvania), the invalidation of a contract clause that sets the policy limit at that floor is permissible for the purpose of allowing the motorist greater coverage. Implicit in plaintiffs' argument is that there exists no harm against any state's interest in providing coverage beyond that for which the contract specified. In support of this contention, plaintiffs cite a case following such reasoning in regard to the application of first party benefits. *Smith v. Firemens Insurance Company of Newark,* 404 Pa. Super. 93, 590 A.2d 24 (1991).

In the case cited by plaintiffs, the Superior Court declined to use the usual choice of law analysis, finding there to be no true conflict of laws between the laws of New Jersey and Pennsylvania. *Id.* The injured motorist in the case attempted to have the laws of New Jersey invalidate the first party benefits clause in the motorist's insurance contract that was written in accordance with Pennsylvania law. *Id.* Under the contract, the motorist was limited to $10,000 in first party benefits. *Id.* The motorist attempted to invalidate his contract regarding first party benefits in an attempt to seek coverage beyond the first party benefits floor set forth by Pennsylvania. In attempting to invalidate the provision, the injured motorist sought the application of New Jersey law

to the New Jersey based insurer. The Superior Court found that the policy underlying setting first party benefits at $10,000 was to insure the injured motorist receive at least that amount. "Applying the New Jersey provisions in no way defeats Pennsylvania's interest reflected in section 1711, because with the application of the New Jersey statute, the insured will receive more than the $10,000 minimum coverage; thus, application of the New Jersey statute in this case furthers Pennsylvania's interest in assuring that its citizens receive a certain minimal level of coverage." *Id.* at 98, 590 A.2d at 27.

We find the reasoning of *Smith* to be inapplicable in that, in large part the Superior Court, in making the decision, was influenced by a specific New Jersey statute that demanded the clause of the contract be invalidated. The New Jersey statute in that case required insurers in New Jersey who sold policies to motorists in any other state to provide first party benefits beyond the Pennsylvania minimum for such benefits. *Id.* at 97, 590 A.2d at 26; N.J. Stat. Ann. §17:28-1.4 (West 1988). Thus, a specific law applicable to New Jersey insurers required that the New Jersey insurer in *Smith* provide the benefits the insured requested. Through the principle of comity, the Superior Court applied the law of New Jersey binding the New Jersey insurer. *Id.* at 99, 590 A.2d at 27. The court reasoned that a law directly on point from the foreign state required that the first party benefits clause be provided in a certain manner beyond the floor set forth by Pennsylvania and the contract failed to abide by that law. *Id.* Between the states involved in the case, there was no harm in invalidating a clause of a contract that was illegally written by one of the parties under the law applicable to that party. Thus, the only harm that could

occur to either of the state's interests would happen only by ignoring New Jersey's law governing its insurers.

In the instant case, there exists no law invalidating the clause at issue in this case and an invalidation of a contract validly written under a state's law, governing the contract, is against the interest of that state's law. The contract between two New York parties executed in New York was valid in New York and, therefore, valid in Pennsylvania because Pennsylvania's uninsured and underinsured motorist provisions only apply to cases involving contracts delivered or issued for delivery with respect to vehicles registered or principally garaged in the state. 75 Pa.C.S. §1731. Because Pennsylvania law does not in any way directly invalidate the clause of the contract, a conflict exists in an attempt to apply Pennsylvania law to overturn a valid contract written under the laws of New York. New York has an interest in seeing that contracts which do not violate, directly,[3] the law of any other state be enforced. With no basis existing for finding the contract in the instant case to be invalid, the court must examine the contract under the laws to which it applied; and, therefore, any attempt to apply the law of Pennsylvania to the contract creates a conflict of the laws between the two states in that to apply Pennsylvania law one must ignore a valid contract written under New York law. In that we find *Smith* to be inapplicable and based upon our own reasoning, we hold that a conflict exists between Pennsylvania and New York's laws in this case.

3. The New York contract does not violate directly Pennsylvania law because Pennsylvania law does not in any way apply to the parties under the facts of the execution of the contract, unlike the New Jersey statute in *Smith* that directly applied to the insurer, even though it was not necessarily determinative of Pennsylvania's decision on the choice of law in that case.

Because a conflict exists between the the two states, we must focus on a conflict of law analysis. "Pennsylvania's choice of law approach combines both the Restatement (Second) of Conflicts of Law (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant states' policies with respect to the controversy)." *Home Insurance Co. v. McGovern,* 837 F. Supp. 661, 664 (E.D. Pa. 1993) citing *Blakesley v. Wolford,* 789 F.2d 236, 238-39 (3d Cir. 1986).

Pennsylvania's interests relate to that fact the parties now live in Pennsylvania, while New York's interest pertains to the enforcement of a valid contract in that state. In consideration of these basic interests, all of the relevant contacts for a contract action favor the application of New York law. Plaintiffs were domiciled in New York at the time of the contract, the contract was executed and delivered in New York, a New York address was placed on the declaration sheet, and the parties were executing a contract that was expressly designed for New York domiciliaries (the contract being labeled accordingly). Plaintiffs' argument that Pennsylvania law should apply is based on the intentions of the parties to move to Pennsylvania a month before the accident occurred. However, in analyzing the contacts of the case, especially considering this is a contract action, the contacts with Pennsylvania pale in comparison to those of New York. In comparison to the facts surrounding the contract, which all relate to New York, plaintiffs only argue that they had an *intention* to have a contact with Pennsylvania, in that they were planning on moving to the Commonwealth at some point after the accident.

Although it is true that where a contract is performed is not controlling to a choice of law decision if the con-

tract is intended to be executed in another place, in this case, there is no material issue of fact questioning the parties had the intention, at the time of the contract, that plaintiffs would be domiciled in New York. It was only a month before the accident that the parties began to believe they would live in Pennsylvania, long after the contract had been executed, thus, the connection with Pennsylvania regarding Pennsylvania law is weak. With such limited contacts to the state of Pennsylvania, Pennsylvania's interests in the matter are inconsequential.[4] Therefore, the law of New York is applicable to the contract, requiring that the court find the contract to be valid.[5]

---

4. Defendant also argues that even if Pennsylvania law was applied, the case should be dismissed because the plaintiffs have failed to seek compensation from the policy covering the motor vehicle occupied by Deborah Bennison at the time of the accident. 75 Pa. C.S. §1733. We agree with defendant's argument, and we note that plaintiffs in their brief, and at argument, failed to address this issue.

5. Plaintiff uses several cases to argue the proposition that New York case law supports applying a foreign state's law in factual circumstances such as the ones presented in this case. *Allcity Insurance Co. v. Williams,* 506 N.Y.S.2d 974 (N.Y.App. 1986) and *Country-Wide Insurance Co, v. Rodriquez,* 437 N.Y.S.2d 674 (N.Y.App. 1981) (in both cases a specific New York law required foreign state law to apply for purposes of applying liability insurance); *Berman v. Hertz Corp.,* 511 N.Y.S.2d 938 (N.Y.App. 1987) (accident and insurance contract entered into in foreign state); *Smith v. Nationwide Insurance Co.,* 546 N.Y.S.2d 522 (N.Y.Sup.Ct. 1989) (New York trial court deliberately ignored the language of New York law noted in *Allcity* and *Country-Wide* for purpose of allowing county resident to collect more compensation); and *Allstate Insurance Co. v. Hartford & Indemnity Co.,* 455 N.Y.S.2d 385 (N.Y.App.Div. 1982) (applied New York statute that required New York law to apply for insurers authorized to conduct business in state).

## III

Plaintiffs also make several additional arguments as to why the defendant's motion should be denied. The first argument is that "gap" coverage is contrary to public policy and against Pennsylvania law. In support of this theory, plaintiffs cite *Allwein v. Donegal Mutual Insurance Company,* 448 Pa. Super. 364, 671 A.2d 744 (1996). The case examined an insurance contract that was written under the sovereignty of Pennsylvania law and used "gap" coverage. In that the case was applying Pennsylvania law to "gap" coverage, we find the case inapplicable to our analysis of New York law in the instant case. Furthermore, any hypothesis by plaintiffs that the case stands for the proposition that any "gap" coverage plan validly entered into in another state is invalid in Pennsylvania is unsupported. We do not find sufficient appellate authority or sufficient unfairness in New York law to invalidate a contract that was legally binding where it was created.

The plaintiffs' next argument is that the language of the contract is invalid because it is ambiguous. Plaintiffs' argument revolves around portions of the contract that use the word "excess." In reading the contract in full, we find that there exists no other possible reasonable interpretation of the contract than the one proffered by defendant. The use of the word "excess," which has a separate meaning as an industry term, does not alone invalidate any portion of the contract because each portion when read in full is completely explained and cannot be reasonably interpreted contrary to its plain meaning of the language it uses.[6]

---

6. There was one portion of the contract not using the word "excess" that plaintiffs also contended was vague and confusing. In their brief, plaintiffs quote half a sentence which explains that the insurer

Plaintiffs also argue that an issue exists regarding the reasonable expectations of the insured regarding the insurance coverage provided by the contract. As we have previously noted, we find the contract's terms cannot reasonably be interpreted in any other way; and, therefore, we find plaintiffs' argument to be without merit.

Finally, plaintiffs contend that the pleadings do not contain sufficient information as to allow a judgment on the pleadings. As plaintiffs note in their own brief, "[o]n a motion for judgment on the pleadings, the trial court must confine its consideration to pleadings and relevant documents and accept as true all well-pleaded statements of fact, admissions, and any documents properly attached to pleading[s] presented by the party against whom a motion is filed." Plaintiffs' brief at 24-25 citing *McAllister v. Millersville Mutual Insurance Company,* 433 Pa. Super. 330, 334, 640 A.2d 1283, 1285 (1994). Plaintiffs cite what they believe are two critical matters not of record and the court should require before granting the motion. The first matter involves whether there exists sufficient evidence in the record that the tort-feasor in the case was uninsured under the plaintiffs' contract. However, after examining the pleadings, we find there exists no genuine issues of material fact in regard to whether the plaintiffs were uninsured under section I(c)(3), parts (i) of the SUM endorsement. Plaintiffs also argue that nowhere in the pleadings does sufficient evi-

---

will pay "all sums" that plaintiffs would be entitled to as damages. We agree with plaintiffs that when you only quote half of the sentence the phrase "all sums" can be confusing, but when you read the entire sentence (as it is in the contract) there can be no confusion that the phrase "all sums" is limited in various ways.

dence exist for defendant's assertion in their motion that the car at issue was garaged in New York. While we agree with plaintiffs that the term garage does not appear in the pleadings, the declaration sheet of the contract at issue does list a New York address. Plaintiffs' argument relates back to the choice of law analysis we noted earlier. In previously analyzing the many facts demanding that New York law be applied, to which plaintiffs admitted or are part of the record, we found no genuine issues of material fact existed and the failure of the use of the word garage in the pleadings does not undercut that conclusion.

## CONCLUSION

This court will not accept plaintiffs' attempt to ignore a validly written contract. Although other state courts have been willing to ignore the uninsured motorist provisions of a validly written contract, we do not believe Pennsylvania should do so.[7] Validly written contracts should not be invalidated without a proper foundation in law for so doing. In that the terms of the subject contract are validly written and enforceable under the law applicable to it, which is New York, the plaintiffs' claim for uninsured motorist benefits beyond the policy must be dismissed. Therefore, for the aforementioned reasons we issue the following order:[8]

---

7. See 83 A.L.R.3d 321.

8. Although rendered moot by this decision, we find that the matters requested for admission to have been conclusions of law; and, thus, the court would have sustained defendant's objections to plaintiffs' request for admissions.

## ORDER

And now, June 14, 1999, upon consideration of the defendant's motion for judgment on the pleadings, the briefs thereto, and the argument thereon, the court hereby grants the motion. Accordingly, judgment is granted against the plaintiffs.