J-A02019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONNA M. OLSON AND DENNIS OLSON, HUSBAND AND WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY; MICHAEL SAYRE, JR.; AND INTERNATIONAL TITANIUM CORP. | : | No. 737 WDA 2019 |
| | : | |
| APPEAL OF: STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY AND INTERNATIONAL TITANIUM CORP. | : | |

Appeal from the Order Entered April 16, 2019
In the Court of Common Pleas of Beaver County Civil Division at No(s):
10835 of 2017

BEFORE:  SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 03, 2020**

Appellants, State Auto Property and Casualty Insurance Company ("State Auto") and International Titanium Corp. ("International"), appeal from the April 16, 2019 order granting summary judgment in favor of Michael Sayre Jr., ("Sayre"), Donna M. Olson, and Dennis Olson (collectively, "the Olsons") and denying a summary judgment motion filed by State Auto and International.  We affirm.

The trial court summarized the relevant factual and procedural history of this case as follows.

The underlying accident occurred on August 2, 2012, in New Brighton, Beaver County, Pennsylvania. Donna Olson was a passenger in a motor vehicle driven by a third party[,] and was traveling on Sixth Avenue. [] Sayre was operating his own motor vehicle, acting in the course and scope of his employment with [International] for the purpose of picking up the company's mail, and traveling directly in front of the vehicle in which [Donna] Olson was a passenger. [] Sayre proceeded to back his vehicle up and struck the front of the vehicle in which [Donna] Olson was a passenger. At the time of the accident, [] Sayre was the general manager of [International.]

\*\*\*

[Following the accident, the Olsons filed a tort action against Sayre for personal injury]. While that case was pending, [the Olsons] initiated [the instant] action for declaratory relief, asserting that there should be additional insurance coverage available in the underlying action[.] [Specifically, the Olsons] contended [] that [] Sayre should also be covered by the auto insurance policy issued by [State Auto to International].

[Thereafter, State Auto, International, and Sayre] filed preliminary objections to the [Olsons'] [c]omplaint for [d]eclaratory [r]elief, challenging [the Olsons'] standing to initiate the action. Prior to [] argument on the preliminary objections, [] Sayre filed an [a]nswer, [n]ew [m]atter, and [c]ross-[c]laims, including a cross-claim asserting his own claim for coverage under the State Auto policy. Judge Deborah Kunselman[1] . . . [held] that the preliminary objections [regarding the Olsons'] standing were sustained, without comment. [In the same order, Judge Kunselman permitted the declaratory judgment action to proceed as Sayre had standing to pursue a claim for coverage against International and its carrier, State Auto].

Trial Court Order and Opinion, 4/16/19, at 3-4 (footnote added).

On November 26, 2018, Sayre filed a motion for summary judgment.

Sayre's Motion for Summary Judgment, 11/26/18, at 1-6. State Auto,

_____

[1] In November 2017, Judge Deborah Kunselman was sitting as a judge in the Court of Common Pleas of Beaver County. She is currently a judge on this Court, but is not a panel member in this case.

International, and the Olsons followed suit, filing motions for summary judgment on January 17, 2019. State Auto and International's Motion for Summary Judgment, 1/17/19, at 1-6; Olsons' Motion for Summary Judgment, 1/17/19, at 1-5. The trial court entertained oral argument on the motions on March 20, 2019. N.T. Summary Judgment Hearing, 3/20/19, at 1-23. Thereafter, on April 16, 2019, the trial court entered summary judgment in favor of Sayre and the Olsons but denied the motion for summary judgment filed on behalf of Appellants. Trial Court Order and Opinion, 4/16/19, at 1-15. This timely appeal followed.[2]

Appellants raise the following issue for our consideration:

Did the trial court commit an error of law in granting summary judgment in favor of [the Olsons] and Sayre where Sayre's Dodge Ram was a borrowed vehicle such that neither Sayre nor his vehicle were covered under [International's business auto p]olicy at the time of the accident?

Appellants' Brief at 4.

Our standard of review is as follows:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

---

[2] Appellants filed a notice of appeal on May 13, 2019. On May 22, 2019, the trial court issued an order directing Appellants to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Appellants timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 13, 2019, expressly noting that it relied on its April 16, 2019 opinion for this appeal.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the [nonmoving] party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

Additionally, we note that the interpretation of an insurance policy is a question of law that we will review *de novo*.

*State Farm Mut. Auto. Ins. Co. v. Dooner*, 189 A.3d 479, 481–482 (Pa. Super. 2018) (internal citations omitted).

Herein, Appellants argue that the trial court erred in granting the motions for summary judgment filed by Sayre and the Olsons because Sayre "consented to temporarily using his personal vehicle to perform [International's] business." Appellant's Brief at 12. As such, International "borrowed" Sayre's vehicle at the time of the accident and, therefore, "neither Sayre nor his vehicle were covered under [International's] [p]olicy at the time of the accident." *Id*.

We note:

The goal in construing and applying the language of an insurance contract is to effectuate the intent of the parties as manifested by the language of the specific policy. When the language of an insurance policy is plain and unambiguous, a court is bound by that language. Alternatively, if an insurance policy contains an ambiguous term, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification

- 4 -

and against the insurer, as the insurer drafts the policy, and controls coverage." Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. Finally, the language of the policy must be construed in its plain and ordinary sense, and the policy must be read in its entirety.

*Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014) (internal and parallel citations omitted).

"Mindful of the foregoing legal principles, it is clear that the focal point of our inquiry is the language of [International's] insurance policy." *State Farm Mut. Auto. Ins. Co.*, 189 A.3d at 483. Under the terms of the policy, State Auto will "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which [the] insurance applies, caused by an 'accident' and resulting from the ownership, maintenance, or use of a covered 'auto.'" R.R. 60a. Thus, for coverage to attach under International's policy, Sayre's vehicle must qualify as a "covered auto" and Sayre must have been an "insured" at the time of the accident.

First, we examine the terms of International's policy defining whether a vehicle constitutes a "covered auto." Under International's policy, liability coverage extends to those "autos" within Category "1." R.R. 56a. Category "1" includes "any auto." *Id.* at 59(a). "Any auto," however, is not defined in the policy. Nonetheless, we conclude, as this Court did in *Bamber v. Lumbermens Mut. Cas. Co.*, 680 A.2d 901, 903 (Pa. Super. 1996), that the term "any auto" "as it is used in the policy, logically refers to all autos falling within the subsequent limited categories '2' through '9.'" *Bamber*, 680 A.2d

at 903; **see also** R.R. 59(a). Category "9," entitled "non-owned 'autos,'" is relevant in this case. Category "9" reads as follows:

> 9 = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

R.R. 59(a). Accordingly, any autos not owned, leased, or borrowed by International but used in connection with its business are considered "covered autos" pursuant to Category "9." **Id.**

We now turn to the terms of International's policy detailing who qualifies as an "insured." It is undisputed that, at the time of the accident, Sayre served as International's general manager. As such, we note the following relevant provisions. In Section II(A)(1), the policy defines insureds as follows:

> 1. WHO IS AN INSURED
>
> The following are "insureds":
>
> > a. You for any covered "auto."
> >
> > b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
> >
> > > * * * * * *
> > >
> > > 2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.

R.R. 60(a). We also note the following provision included within the endorsement section of International's policy.

> G. EMPLOYEES AS INSUREDS
>
> The following is added to SECTION II – LIABILITY COVERAGE, Paragraph A.1. Who Is An Insured provision: Any "employee" of

yours is an "insured" while using a covered "auto" you do [not] own, hire, or borrow in your business of personal affairs.

R.R. 87(a).

Pursuant to the aforementioned provisions, whether Sayre's vehicle qualifies as a "covered auto," and whether Sayre himself is an "insured," depends upon whether, at the time of the accident, International "borrowed" his vehicle.

The policy does not define the term "borrowed." Nonetheless, because "borrowed" is a "[w]ord[] of common usage," it is to be "construed in [its] natural, plain, and ordinary sense" and "we may inform our understanding of [this] term[] by considering [its] dictionary definition." *Wagner v. Erie Ins. Co.*, 801 A.2d 1226, 1231 (Pa. Super. 2002). Merriam-Webster defines "borrow" to mean "to receive with the implied or expressed intention of returning the same or an equivalent." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 144 (11th ed. 2003). Black's Law Dictionary defines "borrow" as "tak[ing] something for temporary use." BLACK'S LAW DICTIONARY 196 (8th ed. 2004).

Herein, it is undisputed that, on the day of the accident, Sayre served as International's general manager. After initially reporting to International's office, Sayre then drove his own vehicle to pick up the mail for the company. Trial Court Opinion, 4/16/19, at 3. In doing so, Sayre embarked, in essence, on a company errand. The record reflects that International often dispatched Sayre for this purpose. Indeed, during Sayre's deposition, he testified that he frequently used his own vehicle to retrieve the company mail or "haul[] things"

for the company. *Id.* at 4. Notably, Sayre also testified that, when he performed such duties, he would submit "receipts for gas and some repairs to his vehicle" and would, in turn, be "reimbursed by [International]." *Id.* When considering these facts, it is relatively clear that, at the time of the accident, International temporarily utilized Sayre's vehicle with the implied intention of returning it. This conclusion is consistent with case law in other jurisdictions. *See Andresen v. Employers Mut. Cas. Co.*, 461 N.W.2d 181, 185 (Iowa 1990) (holding that when an employer "temporarily gain[s] the use of [an employee's] vehicle," this "arrangement falls within the ordinary meaning of the term 'borrow'" even though the employee "drove [his own] car on the [employer's] business."); *Atl. Mut. Ins. Co. v. Palisades Safety & Ins. Ass'n*, 837 A.2d 1096, 1100 (N.J. Super. Ct. App. Div. 2003) (holding that an employer "borrowed" an employee owned and operated vehicle when it gained "substantial dominion or control" of the vehicle by requiring the employee to run an "errand" for the company while "remain[ing] on the clock and reciev[ing] pay."); *Travelers Indem. Co. v. Swearinger*, 169 Cal. App. 3d 779, 785 (Cal. Ct. App. 1985) (holding that a "borrowing can occur [when an entity] permits [its] employee[] [to] use [] his or her [own] vehicle on [the entity's] errand" because, in doing so, the entity "properly gains the use of [the employee's] vehicle for its purposes[,] whatever may be said of the employee's dominion over the vehicle (by ownership) or physical possession of it (by driving it).").

Notwithstanding legal precedents applying the common definition of "borrow," the trial court held that "Sayre's automobile was not a borrowed vehicle at the time of the accident." Trial Court Opinion, 4/16/19, at 11. In reaching this conclusion, the court apparently rejected the notion that an employee can "borrow" his own vehicle. We note, however, that this determination is at odds with the aforementioned case law applying the definition of "borrow" to similar facts. Indeed, the fact that International reimbursed Sayre for gas and vehicle repairs strongly suggests that International "borrowed" Sayre's vehicle when he used it for company errands. *See Travelers Indem. Co.*, 169 Cal. App. 3d at 785. Furthermore, the trial court opined that Sayre's vehicle could not be "borrowed" because he "used his vehicle on an almost daily basis to pick up the mail as part of his employment performance" and, as such, Sayre's use was not "temporary." Trial Court Opinion, 4/16/19, at 11. Thus, in applying the definition of "borrow" to the present circumstance, the trial court appears to have conflated the frequency of occurrence with duration of use. This conclusion is contrary to the common usage of the term "borrow."

Nonetheless, we are constrained to affirm the trial court's ruling because "[i]t is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court." *Czimmer v. Janssen Pharm., Inc.*, 122 A.3d 1043, 1064 n.19 (Pa. Super. 2015), *quoting* *Commonwealth v. Hull*, 705 A.2d 911, 912 (Pa. Super. 1998). Herein, we are bound by this Court's previous decision in *Bamber*.

In **Bamber**, this Court interpreted a nearly identical insurance policy under factually similar circumstances. The facts of the case are as follows. "In 1991, appellant[,] John Bamber[,] sustained a number of injuries following an automobile accident that allegedly occurred during the course of his employment" at the Chamber of Commerce of the United States of America ("Chamber of Commerce"). **Bamber**, 680 A.2d at 902. After the accident, Bamber sought underinsured motorist ("UIM") benefits under the Chamber of Commerce's business auto insurance policy ("Chamber policy"). **Id.** The insurance company, Kemper National Insurance Company ("Kemper"), denied coverage and successfully moved for summary judgment against Bamber in subsequent litigation. **Id.**

On appeal, Bamber argued that "he [was] entitled to UIM benefits" under Chamber's policy with Kemper. **Id.** He specifically claimed that "his vehicle was a 'covered auto' under [] Chamber['s] policy when [it] was used in the course of Bamber's employment." **Id.** This Court agreed.

First, the **Bamber** Court determined that the vehicle qualified as a "covered auto" under Chamber's policy. In particular, the Court held that Bamber's vehicle fell within the following category:

> 9 = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

*Id.* at 903. After citing this provision, the Court simply concluded that "Bamber's personal vehicle clearly [fell] into this category when it [was] used in the course of his employment with the Chamber of Commerce" and, as such, the vehicle was a "'covered auto' for purposes of liability coverage." *Id.* The Court, however, did not consider whether Bamber's vehicle was owned, hired, or borrowed by the Chamber of Commerce at the time of the accident.

The Court then addressed whether Bamber himself was "specifically excluded from coverage" by the language within the policy detailing who is an "insured." *Id.* The specific provision is as follows:

1. WHO IS AN INSURED

The following are "insureds":

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

* * * * * *

2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.

*Id.* Without providing any analysis, the *Bamber* Court concluded that "Bamber cannot be excluded by [Section II(A)(1)(b)(2)] when he is not in the relevant class of people included in section (b). Section (b) states that it will insure permissive users of covered autos that are **owned, hired, or borrowed** by the Chamber of Commerce. As Bamber's personal vehicle was not owned, hired or borrowed by the Chamber of Commerce, this entire section, including the exclusions, does not apply." *Id.* (emphasis in original).

The **Bamber** Court, therefore, overlooked the possibility that the definition of "insured" applied, but that Bamber himself was not included within its meaning; thus, barring coverage.

Pursuant to **Bamber**, an employee using his or her own vehicle during the course and scope of employment is using a "covered auto" and is an "insured." We have serious misgivings about **Bamber**'s interpretation of the Chamber's policy and its application thereof. Indeed, it appears that the Court concluded that the Chamber of Commerce did not own, hire, or borrow Bamber's vehicle for purposes of finding that it was a "covered auto."[3] If, however, Bamber's vehicle were not owned, hired, or borrowed, Bamber could not qualify as an "insured" because an "insured" is one who engages in the permissive use of a "covered auto" that the "Named Insured," *i.e.*, the Chamber of Commerce, owns, hires, or borrows.[4] Instead of carrying out the

---

[3] The **Bamber** Court focused on the second sentence of Category "9" to conclude that Bamber's vehicle was a "covered auto." **Bamber**, 680 A.2d at 903. This sentence included those "'autos' owned by [the Chamber of Commerce's] employees . . . used in [the course of employment]." **Id.** In doing so, the Court ignored the preceding language which excluded those "autos" that the Chamber of Commerce "own[ed] . . . hire[d] . . . or borrow[ed]." **Id.** Thus, by summarily stating that Bamber's vehicle "clearly f[ell] into [C]ategory [9]," it implicitly found that the Chamber of Commerce did not own, hire, or borrow Bamber's vehicle. **Id.**

[4] Pursuant to the terms of Chamber's policy, to qualify as an "insured" an individual/entity must have met the definitions set forth in Section II (A)(1)(a) or Section II (A)(1)(b). **Bamber**, 680 A.2d at 903. Section II (A)(1)(a) covers only the "Named Insured," which, in **Bamber**, was the Chamber of Commerce. Thus, Bamber had to meet the definition provided in Section II (A)(1)(b) to qualify as an "insured." Section II (A)(1)(b) explicitly states that an "insured"

logical consequence of its prior determination, the **Bamber** Court elected not to apply the definition of "insured" to its coverage analysis.

For the foregoing reasons, we have serious reservations regarding **Bamber**'s analysis and interpretation of the Chamber's policy. Nonetheless, we are bound by **Bamber**. **See Regis Insurance Co. v. All American Rathskeller, Inc.**, 976 A.2d 1157, 1161 n. 6 (Pa. Super. 2009) (explaining that a Superior Court panel lacked power to disregard and overrule a binding prior decision). Indeed, a panel of this Court recently followed the **Bamber** Court's analysis while interpreting a similar insurance policy in **Lightner v. Carlevale's Custom Cars, LLC**, 2017 WL 6396084, *1, *5 (Pa. Super. Dec. 15, 2017) (explaining that if an employee was driving the vehicle in question, pursuant to **Bamber**, the employer "would have been covered" because the purpose of "coverage for non[-]owned autos" is to "protect[] the policyholder

_____

is "anyone else" that is using "with [the Named Insured's] permission, a covered 'auto' that [the Named Insured] own[s], hire[s], or borrow[s]." **Id.** Thus, for Bamber to qualify, he needed to be engaged in a permissive use of a "covered auto" that the Chamber of Commerce owned, hired, or borrowed. As explained in footnote three, the **Bamber** Court implicitly determined that the Chamber of Commerce did not own, hire, or borrow Bamber's vehicle when it concluded that Bamber's vehicle was a "covered auto." **Id.** It is therefore inconsistent to conclude that the Chamber of Commerce did **not** own, hire, or borrow Bamber's vehicle for purposes of finding that it was a "covered auto," only to turn around and conclude that Bamber was an "insured" because the Chamber of Commerce owned, hired, or borrowed Bamber's vehicle. To avoid this inconsistency, the **Bamber** Court determined, without explanation, that it would not apply the definition of an "insured" to its coverage analysis. Thus, the Court failed to "give effect" to the language of the policy as required when interpreting an insurance contract. **Erie Ins. Exchange v. Conley**, 29 A.3d 389, 392 (Pa. Super. 2001).

- 13 -

in cases of *respondeat superior*.").  Accordingly, until this Court grants *en banc* review,[5] we are bound by the decision in **Bamber** and, as such, we are constrained to affirm the trial court's April 16, 2019 order.

Order affirmed.

Judge Shogan joins.

President Judge Emeritus Ford Elliott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/03/2020

---

[5] "It is well-settled that this Court, sitting *en banc*, may overrule the decision of a three-judge panel of this Court." **Commonwealth v. Morris**, 958 A.2d 569, 581 n.2 (Pa. Super. 2008) (*en banc*); **see also Commonwealth v. Jacobs**, 900 A.2d 368, 377 n.9 (Pa. Super. 2006) (*en banc*).